(No. 27532.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARLETUS SHARP, Plaintiff in Error.

*Opinion filed November 19, 1943.*

504

BENJAMIN C. BACHRACH, FRANK J. FERLIC, and JOHN M. BRANION, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JOSEPH A. POPE, of counsel,) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Plaintiff in error, Arletus Sharp, was tried before the judge without a jury in the criminal court of Cook county and convicted of the crime of taking immoral and indecent liberties with a child, and sentenced to the Illinois State Penitentiary, with a recommendation from the court of a minimum sentence of three years, and a maximum sentence of seven years.

Plaintiff in error contends the evidence was insufficient to warrant conviction; that the court erred in receiving hearsay testimony, and in restricting the cross-examination of the People's witnesses, and at the same time exhibited bias and prejudice towards counsel for plaintiff in error.

The evidence discloses the prosecuting witness is a girl nine years of age, and that she and a sister eight years of age and a brother ten years of age slept in the same bed in a basement room in their home on Ridge avenue in Evanston, Illinois. The father and mother slept in a room upstairs. The boy ten years of age and the complaining witness slept at the head of the bed and the younger sister at the foot. During the night of July 2, 1942, at about three o'clock in the morning they were awakened by a man who, they testified, entered the room and got into bed with the children and committed the indecent acts charged in the indictment. The prosecuting witness screamed and the man pretended to be their father. The bedroom was partially illuminated through a window by a street lamp. The prosecutrix testified she recognized the man by his voice and features as one she had met before in her yard, and with whom she had talked on several occasions, and who lived across the alley. She identified the plaintiff in error as the same man who entered her room during the night. After she screamed he left the room through the window. The testimony of the complaining witness mentioned in the indictment was corroborated in substance by the two other children.

Plaintiff in error applies the rule that a conviction for taking indecent liberties with a child must be as clear and convincing as in a conviction for rape, (*People* v. *Freeman,* 244 Ill. 590,) and that the uncorroborated testimony of a prosecuting witness, where denied by the defendant in a conviction for statutory rape, is not sufficient to sustain it. *People* v. *Kazmierczyk,* 357 Ill. 592.

There is no disposition upon the part of the People to deny the principle laid down in these cases, but the People contend they do not apply because the evidence was clear and the prosecutrix was corroborated. The testimony of the three children on direct examination is amply sufficient to sustain the conviction. It is contended, however, that

the cross-examination of these witnesses shows so much confusion and contradiction that their testimony becomes wholly worthless as evidence to prove the charge beyond a reasonable doubt.

Counsel for plaintiff in error sets forth at great length the questions and answers propounded upon cross-examination. It developed the younger girl testified she did not see defendant come in through the window, and that she first saw him when he was walking around the bed, and it was then she began to cry out for her mother and father. Other details of her direct testimony were somewhat changed upon cross-examination, and the same is true of the other two children. For instance, the eight-year-old girl, who had testified substantially the same as her sister, on cross-examination said she was asleep, but explained this to mean she was awake and heard the man, but closed her eyes and pretended she was asleep.

The boy also testified he saw defendant walk around the room, and that the latter patted him on the head just before he went out of the window and said he was his father. The material matters necessary to establish the crime, however, were not shaken on cross-examination. All three of the children testified Sharp was in the room at about three o'clock A.M.; that they recognized him; that he got into bed with them. They described the acts committed in substantially the same manner; they all testified they cried out for their mother and father, who did not come down immediately because doubtless they did not hear them. And likewise they all saw him leave the room through the basement window.

The testimony of the children as to the details of what took place is not exactly the same, and in this respect strengthens rather than weakens their testimony, because impressions created by fright and surprise are not imprinted upon witnesses alike. We think the testimony of the complaining witness establishes the presence of the

defendant in the room, and that her description of what occurred is substantially corroborated by the testimony of the other two children. We are not reciting the details of the criminal acts described in the testimony other than to find, if true, the charge was amply sustained. Plaintiff in error takes the position that because of discrepancies in the testimony, and because the defendant attempted to establish an alibi, and denied the commission of the crime, the acts made a crime by the statute have not been sufficiently proved to warrant a conviction. With this we can not agree.

Plaintiff in error contends the court improperly permitted a police officer to testify as to what was said to him by a woman at whose house defendant claimed he was staying at the time of the commission of the crime. The defendant testified that on the night of the commission of the crime he was at the home of a girl friend until 5:30 in the morning. He also testified he heard the testimony of one of the police officers at the time of his preliminary hearing, and that the officer stated to the court he had had a conversation with the woman in question, and that she told the officer Sharp had not been at her home on the evening of July 1 or the morning of July 2.

When the officer was placed upon the stand in rebuttal he was permitted to testify to what he had stated in court, and his version was that he had testified this woman gave the information Sharp was at her house on the evening of June 30, and left on the morning of July 1, at 5:30. It will be observed the defendant first offered this testimony as to what the officer had testified to. The officer's version of his former testimony is more favorable to defendant than the latter's. Sharp testified the officer related the woman said he was not there on the night of July 1 and the morning of July 2. The officer testified the conversation was that Sharp was at such place on the night of June 30 and the morning of July 1. But in either event

what was related by the woman did not establish the defendant was at said place on the morning of July 2. This witness to the alibi was not produced upon the trial. The defendant was a party to the lawsuit, and, of course, any statement made by him contradicting his testimony upon the stand was permissible. Defendant's contention that his constitutional right to meet witnesses face to face was violated cannot be sustained in view of the fact it was he who first injected the testimony of the absent witness into the record, and related it in a manner different from that claimed by the officer who had given the testimony. He could not be prejudiced by rebuttal testimony as to the actual words used in former testimony, when the recollection of the witness was less harmful than his own. In any event the right to object to the officer giving his version of his own testimony was waived by the defendant's production of it in the first instance. (*People* v. *Czajkowski*, 342 Ill. 144.) There was no attempt here to prove the testimony of an absent witness. The only thing done was to establish what a witness had testified to on a former hearing, the exact language of which was in dispute.

Plaintiff in error also contends he was limited in his right of cross-examination, and that in ruling against the contentions of plaintiff in error the court's attitude displayed bias and prejudice. In the cross-examination of the eight-year-old sister, by the propounding of leading questions, she was induced to say she saw "the shadow of the man," and that she knew it was Sharp; that she did not know when he was in the room; that somebody ran out of the room. She then said she did not see Sharp in the room, but immediately testified she saw him after he had been in the room and jumped through the window. On redirect examination she said she heard Sharp walking around the room, and that she was awake at that time and that she recognized the voice, and that he started saying "he was my daddy." In answer to the question of

defendant's counsel whether her sister told her she heard the man in the room say something she testified her sister said "that somebody was over there, and then I stayed asleep and woke up and he was out of the room."

The record shows an exhaustive examination of these three children, through the putting of leading questions getting the witnesses to answer in a manner that to some extent contradicted their testimony given in chief under direction examination. Upon several occasions the court, in sustaining objections to some of the leading questions propounded by defendant's counsel, suggested the children's version of what took place could be better elicited by permitting them to tell it in their own manner. It was this action of the court which is claimed to show bias and prejudice.

The record discloses that every phase of the children's testimony was subjected to rigorous cross-examination, and while details of the actions of the defendant, and where he was and how much they had seen and observed, vary to some extent from that related on direct examination it is apparent these contradictions are largely the result of skillful questions put by experienced counsel to a child of tender years, whose testimony as to the facts essential to prove the commission of the crime was not, in our judgment, substantially changed. Neither do we think the right to cross-examination was unduly limited, because even though the court had sustained some objections because he thought counsel was putting questions of a deceptive character, yet the record shows a complete cross-examination of the witnesses was permitted.

The claim the court was biased and prejudiced arose from the fact he suggested counsel ask the children to relate what happened instead of requiring them to answer certain leading questions; also because when an objection had been sustained the court refused to allow the record to show an answer the examiner wished, but which was not

made. Our examination of the record does not disclose anything that shows bias against the defendant, but merely that the court was trying to elicit the facts for the purpose of enabling him to properly decide the case.

Plaintiff in error has incorporated in his printed brief some twenty-five pages of the cross-examination of these children, which, if taken alone, without consideration of the direct testimony, convinces us beyond a reasonable doubt the defendant was in their room at the time in question, and committed acts bringing him within the statute under which he was indicted. We think the evidence abundantly establishes the defendant's guilt, and that there was no error upon the part of the court in the conduct of the trial.

However, the court did commit error in sentencing the defendant to a minimum period of three years and a maximum period of seven years in the penitentiary. The statute under which this advisory judgment was made (Ill. Rev. Stat. 1941, chap. 38, par. 802 *et seq.,*) was held unconstitutional in *People* v. *Montana,* 380 Ill. 596. The action of the court, however, in finding the defendant guilty is not affected by this decision; it is only the sentence after conviction which is erroneous. This may be corrected upon the cause being remanded to the criminal court of Cook county.

The action of the criminal court of Cook county in finding the defendant guilty as charged in the indictment is affirmed; but the judgment is reversed and the cause is remanded to the criminal court of Cook county with directions to enter a judgment and sentence in accordance with the law.

*Reversed and remanded, with directions.*