THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERBERT F. EVERHART, Defendant-Appellant.

(Nos. 58480, 58895 cons.;

First District (4th Division)—August 28, 1974.

Robert B. McGee, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Zachary L. Stanger, and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment entered by the Circuit Court of Cook County. The defendant was convicted of the crime of taking indecent liberties with a child and was sentenced to a term of 4 to 8 years in the Illinois State Penitentiary.

The issues presented on appeal are (1) Whether the defendant was proven guilty beyond a reasonable doubt; and (2) Whether the trial court abused its discretion in receiving in evidence the defendant's prior conviction.

On Saturday, August 14, 1971, the complaining witness, Donna Marie Danek, 11 years old, was delivering newspapers for her girlfriend, Nancy Smith, who was on vacation. At approximately 4 P.M. she arrived at the home of the defendant, Herbert Everhart. Complainant was using a bicycle for transportation and was carrying the newspapers in a canvas bag around her neck. The bag was hanging down in front of her below her waistline. She placed a newspaper between the screen door and the wooden door of defendant's home and returned to her bicycle, 25 feet away on the sidewalk. The defendant, hearing someone at the screen door, opened the house door and saw the complaining witness at her bicycle. The defendant inquired about the regular newspaper girl, Nancy Smith, and the complainant began walking back toward the screen door.

The complaining witness testified she went into the defendant's home and he partially closed the front door. The defendant inquired if complainant liked boys and she said yes. He then inquired "Were you ever virginity [sic] before?" and she said no. Complainant also testified that the defendant then began feeling her breasts and between her legs on top of her clothing. She estimated this lasted 5 or 10 minutes but was not sure of the time. She further testified she was asked to kiss the defendant on the cheek before she left. Complainant did not cry or make any protest. There was no violence and she was not injured. She stated she went home immediately, one block away, and told her mother what happened. Mrs. Danek called the police, who arrived approximately 10 or 15 minutes later. The police took the complainant back to the defendant's house where she identified him. Complainant said she had a chart

with the name and address of every person to whom she was to deliver newspapers, but she did not tell the police about it.

The defendant testified he was home on the day in question with his stepdaughter, Camille Powell. He heard a noise at the front screen door and when he opened the house door he saw the complaining witness about to get on her bicycle, 25 feet away on the sidewalk. He inquired "Where is my girl, Nancy?" and complainant said "Oh, she is on vacation. I am filling in for her right now." Defendant then asked "Oh, are you her sister?" and she said "No, I am just a girlfriend delivering papers for her." While she was talking the complainant walked toward the house to within approximately 15 feet from the screen door and then turned around and returned to her bicycle. She then left.

The defendant's stepdaughter, Camille Powell, testified she was at home with the defendant and in the bathroom putting on makeup with the door "ajar" at the time of the alleged incident. She was only 10 or 11 feet from the front door, and she heard the defendant say "Hello" and "Where is my girl, Nancy?" and "Tell her I said hi." The conversation lasted only a minute or two. Miss Powell testified she did not hear the defendant ask for a kiss on the cheek or anything along those lines. She did not see or hear the complainant enter the house.

In rebuttal, the State offered into evidence for impeachment purposes, a prior conviction of the defendant for the crime of taking indecent liberties with a child. The defendant had been sentenced to 3 to 15 years in the penitentiary in January, 1964, and was released in November, 1966. Defendant has not been in any trouble since his release. He has been married 4½ years and has a grown stepdaughter living at home, owns his own home in Hickory Hills, and operates a television repair business. Defendant objected to the admission of the prior conviction into evidence on the ground that it in no way affected his credibility and only prejudiced the court against the defendant.

The trial court found the defendant guilty of taking indecent liberties with a child and sentenced him to 4 to 8 years in the Illinois State Penitentiary.

■■ The defendant first contends he was not proven guilty beyond a reasonable doubt. It is well established that a reviewing court will not disturb a conviction for indecent liberties with a child, where the defendant denies the charge, where there is either some corroboration of the testimony of the complaining witness or that testimony is otherwise clear and convincing. (*People v. Falk* (1970), 121 Ill.App.2d 1.) By either standard, the defendant in the instant case was not proven guilty beyond a reasonable doubt. The testimony of the complaining witness was not clear and convincing and there was no corroboration.

Section 11—4 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 11—4) states:

> "(a) Any person of the age of 17 years and upwards who performs or submits to any of the following acts with a child under the age of 16 commits indecent liberties with a child:
>
> &ast; &ast; &ast;
>
> (3) Any lewd fondling or touching of either the child or the person done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the person or both."

On the evidence presented in the case at bar it cannot be found that the defendant had any intent to arouse his own sexual desires or the desires of the complainant, with defendant's stepdaughter only a few feet away from the alleged incident. The evidence, at best, does not sufficiently establish the requisite intent.

The defendant was in his own home repairing a television set on the date in question. He denied having invited the complainant into his home. Complainant testified the defendant felt her breasts and between her legs, but on cross-examination stated the canvas bag in which she was carrying the newspapers was around her neck and hanging down in front of her below her waistline. It would, therefore, have been most difficult if not impossible for the defendant to perform the complained of acts.

Camille Powell, a grown woman, testified she was in the bathroom only 10 or 11 feet from the front door and heard an innocent conversation between her stepfather and someone else, which lasted only a minute or two. Miss Powell's testimony was not contradicted and is entitled to great weight. It corroborates the testimony of the defendant.

No statement was ever taken from the complainant or her mother by the police or the State's Attorney, and the only recorded recollection was made by the complainant at her home with no indication as to when it was made except that her father had returned home. The complainant's statement was in her own writing, about one-half page long, not dated, not signed, and not revealed until she was asked on cross-examination if she had talked to anyone concerning the alleged incident. She stated she had only spoken to the State's Attorney the morning of the trial when he handed her two typewritten pages to read and she wanted to see the page she wrote, which he then gave her. These documents are not in evidence, therefore not read into the record before us, but it is apparent that a half-page longhand statement could not be transcribed into two typewritten pages without a great deal of exaggeration. We also note that on the back of the indictment the only witnesses listed are the complainant and an arresting officer, yet the child said nothing about talk-

ing to the grand jurors. Officer Philip Boshkoff, the arresting officer whose name appears on the indictment, did not testify at the trial. Officer James White, the other arresting officer, was not listed on the indictment but testified at the trial. His testimony was hearsay as to the complaint and was so ruled by the trial judge. These facts raise grave doubts as to the validity of the proof in this case.

When the complainant was first questioned by the police in the instant case she did not mention the name or address of the defendant. She testified, however, that she had a cardboard chart with the name and address of every person to whom she was to deliver newspapers. She further testified she knew the defendant's name and address and told her mother the defendant "had done those things to her." The arresting officer testified he was never shown the cardboard chart. If the complaining witness knew the name and address of the defendant and had a card with such information on it, the natural and spontaneous reaction would have been to inform the police of such information when questioned.

■■ The complainant's mother was present at the defendant's trial but was never called as a witness by the State. Such an omission is most strange in a sex case involving a child since an irate mother can testify to the immediate complaint of the child. The failure of the complainant's mother to testify in the instant case leaves the testimony of the complainant totally uncorroborated. In *Biel v. Wolff* (1970), 126 Ill.App.2d 209, the appellate court quoted from McCormick on Evidence § 249 (1972), as follows:

> "It is generally agreed that when a potential witness is available, and appears to have special information relevant to the case, * * * and where his relationship with one of the parties is such that the witness would ordinarily be expected to favor him, then if such party does not produce his testimony, the inference arises that it would have been unfavorable." (126 Ill.App.2d at 223.)

Such unfavorable inference arises in the case at bar where complainant's mother failed to testify in behalf of complainant regarding her complaint.

Cases involving indecent liberties with a child are sensitive and difficult to determine. A charge of indecent liberties is an accusation easily made, hard to prove, and harder to be defended by the party accused. (*People v. Nunes* (1964), 30 Ill.2d 143.) Where the State has a witness such as the complainant's mother in the instant case, who could testify to the initial complaint of the child and fails to do so, grave doubt arises as to why she failed to testify. A reasonable conclusion is she could not endure cross-examination for whatever reasons. The defendant

lived only one block from the complainant's home. The police were called after the complainant related the incident to her mother. The record does not show how much time elapsed before the mother called the police. The police arrived approximately 10 or 15 minutes after being called. The mother therefore had considerable time to talk to the complainant alone. It is of utmost importance for the court to ascertain what took place between the two during that period of time, and also if there was any animosity between complainant's mother and the defendant for other reasons. A trial judge experienced in this type of case knows how an enraged mother could ask leading questions and plant ideas in the child's mind. Experience teaches that children of this age sometimes engage in fantasy and sometimes create stories which are easily enlarged by mothers. In the present case, the child used the word "virginity" in her testimony, yet stated on the witness stand she did not know what the word "virgin" meant. In view of the corroboration afforded defendant's testimony by his stepdaughter, and the absence of corroboration of the complaining witness by her mother as to when she allegedly first complained of the incident, we believe the State failed to prove its case beyond a reasonable doubt.

■■ Defendant also contends the trial court abused its discretion in allowing into evidence for impeachment purposes the defendant's prior conviction. It is apparent to us that the introduction of the prior conviction, allegedly for impeachment purposes, along with the argument of the State's Attorney regarding it, was very prejudicial to the defendant. The nature of the prior conviction was for the same crime for which the defendant was being tried. The standards for the admission of a conviction of another crime beyond which the court may not go are set out in *People v. Montgomery* (1971), 47 Ill.2d 510. However, within those restrictions the court still has discretion in the matter. (*People v. Montgomery* (1971), 47 Ill.2d 510, 515, 519.) Although the trial judge stated he was not allowing the prior conviction to control his thinking, he did discuss it and said he would not sentence the defendant as a repeater. We believe the trial judge was subconsciously influenced by the prior conviction when he found the defendant guilty on such flimsy evidence and sentenced him to 4 to 8 years in prison.

■■ We are well aware of the principle that the credibility of witnesses and the weight to be given their testimony is primarily a question for the trial court. (*People v. Falk* (1970), 121 Ill.App.2d 1.) However, we have a duty to study the record and determine whether it supports the trial judge's conclusions. Where acts or circumstances are attributable to either an innocent or a criminal cause, the innocent hypothesis will be adopted. (*People v. Lynn* (1943), 385 Ill. 165.) A review of the record

in the instant case reveals the evidence and the circumstances give rise to a hypothesis of innocence and does not establish the defendant's guilt beyond a reasonable doubt. In *People v. Gardner* (1966), 35 Ill.2d 564, the Illinois Supreme Court stated that where, from the entire record of the case, there was a reasonable doubt of the guilt of the accused, the judgment of guilty would be reversed.

For the reasons stated herein, the judgment of the Circuit Court of Cook County is reversed.

Reversed.

ADESKO, P. J., and BURMAN, J., concur.