THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK ROY BREWER, Defendant-Appellant.

Third District   No. 3—82—0873

Opinion filed August 24, 1983.—Rehearing denied October 14, 1983.

Robert Agostinelli and Jean Herigodt, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

The defendant, Frank Roy Brewer, appeals his convictions for attempted indecent liberties with a child and indecent solicitation following a jury trial in Tazewell County. The defendant was sentenced to an extended term of imprisonment for 12 years on the attempt conviction.

The defendant has raised numerous issues on appeal, i.e., that (1) his identity was not proved beyond a reasonable doubt; (2) reversible error occurred when the trial court allowed over defendant's objection, evidence of other crimes under a *modus operandi* exception to the general rule barring such evidence; (3) he was denied effective assistance of counsel when his court-appointed attorney (a) resumed representation following the disclosure of an alleged conflict of interest, (b) failed to seek suppression of the identification testimony; (4) his conviction for indecent solicitation must be vacated since it was based upon the same act as his conviction for attempt; (5) the imposition of a recoupment order for attorney fees was improper because, (a) the statute authorizing same is unconstitutional, (b) the defendant was denied adequate notice and hearing, and (c) the assessment of $2,000 was arbitrary.

The facts indicate that on August 16, 1982, six-year-old Adam Olinski and seven-year-old Jeremy Bamber stopped at Lincoln Park in Washington, Illinois, to play on the swings and merry-go-round on their way to school. At the park they saw a man, later identified as the defendant, who gave them cigarettes. At the defendant's request, Bamber left his friend alone momentarily, to continue playing on the

park equipment. At this time the defendant unzipped his pants, exposed his penis and asked the Olinski boy if he would "suck his pecker" for $5. The child refused but did not tell his parents about the incident until the following day.

Based upon descriptions given by the boys, the police asked each of them if they could identify the individual from a group of six photographs. Each child selected the defendant's photograph as the man in the park. Later each boy identified the defendant in open court.

■ On appeal, the defendant contends that the identification testimony was not clear and convincing because there were discrepancies in the boys' testimony with regard to their description of the man's clothing and the color of his hair, etc.

The defendant contends that the testimony of the boys changed from an earlier trial of the defendant which ended in a mistrial when the jury was unable to agree on a verdict.

The State acknowledges that while there were some discrepancies in the children's testimony, the trier of fact was in the best position to afford the requisite weight to be given such testimony. We agree.

Where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused (the defendant admitted being in the park on the day in question but denied meeting the boys), providing the witness is credible and viewed the accused under such circumstances as would permit a positive identification to be made. *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313; *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

In determining the admissibility of identification testimony, the following factors should be considered: (1) the opportunity to view the defendant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the defendant; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) The weight to be given regarding identification testimony is a question for the trier of fact and that determination will not be disturbed unless it is so contrary to the evidence that it cannot be justified. *People v. Smith* (1977), 52 Ill. App. 3d 53, 367 N.E.2d 84.

In light of the foregoing factors, we believe it is apparent that the witnesses' in-court identification of the defendant was sufficiently reliable to support the defendant's conviction. Each child had ample opportunity to view the defendant during the course of their encounter with him. Their testimony concerning the events of the day in ques-

tion reflects sufficient attention to detail when measured in light of what children of their age would reasonably be expected to recall about such an incident. Their descriptions of the defendant were reasonably accurate in view of their ages, despite the fact that they were easy prey for the skilled cross-examination techniques of a trial lawyer. Each description accurately depicted an older individual with black and gray hair who had a large nose. Their failure to notice the defendant's tattoos, while important, was not critical. Their photographic identification was unequivocal and sufficiently close in time to the incident to be reliable. Their in-court identification was positive.

While we are aware that in cases dealing with alleged sexual crimes against children, accusations are "easily made, hard to prove, and harder to be defended" (*People v. Everhart* (1974), 22 Ill. App. 3d 727, 317 N.E.2d 720), the testimony need not be so crystal clear that it is perfect (*People v. Voight* (1979), 72 Ill. App. 3d 472, 391 N.E.2d 219; *People v. Newbern* (1974), 18 Ill. App. 3d 532, 310 N.E.2d 42). Minor discrepancies in a child's testimony do not necessarily render the testimony incompetent, unbelievable or necessarily impeached. *People v. Sharp* (1943), 384 Ill. 503, 51 N.E.2d 554.

We believe that the identification evidence presented sufficiently established the defendant's guilt beyond a reasonable doubt. *People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.

■ Next, the defendant claims he was denied a fair trial when the trial court denied his motion *in limine* to prevent the State from introducing evidence of other crimes at defendant's retrial.

While evidence that the defendant has committed other crimes is inadmissible to show that he has a propensity to commit crimes generally, or to show that he has a propensity to commit certain crimes specifically (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489), such evidence is admissible if relevant to show identity by way of proving a *modus operandi* (common design) in the commission of the prior and current crimes. (*People v. Osborn* (1977), 53 Ill. App. 3d 312, 368 N.E.2d 608.) While the crimes need not be "identical" to be admissible, they should share features that are distinctive or peculiar. *People v. Tate* (1981), 87 Ill. 2d 134, 429 N.E.2d 470; *People v. Pavic* (1982), 104 Ill. App. 3d 436, 432 N.E.2d 1074.

The State sought admission of evidence of other crimes committed by the defendant to prove the defendant's identity in the case in question. The other crimes evidence consisted of the testimony of three children to whom the defendant made offers of money in exchange for acts of oral copulation.

The State argued that a *modus operandi* was established by the

following similar features: (1) all victims were young children; (a) all offers were of oral-genital contact; (3) all victims were offered something of value in return for the act; (4) all victims were secluded from the public. The trial court ruled that evidence of the defendant's other crimes would be admitted provided there was evidence that the defendant offered Adam Olinski money.

When the Olinski boy testified that he was offered $5 to perform an act of oral copulation, the trial court allowed the evidence of the defendant's other crimes to be admitted.

We believe the similar features between the various incidents describe such a distinctive pattern of criminal behavior that it was relevant to show the defendant's identity as the perpetrator of the offenses charged. *People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.

The defendant's argument that there were only "superficial similarities" between the crimes previously committed and the instant charges is without merit. Such distinctions as how the request for fellatio was phrased, *i.e.*, "blow job," the different amounts of money offered and the various locations, the range of the children from six to 10 years old, are in our opinion merely meaningless distinctions.

Moreover, the probative value of the evidence of other crimes, which was directed at the issue of identity, far outweighed any prejudice to the defendant. Simply because the evidence admitted, along with other evidence presented, resulted in the defendant's convictions, does not establish prejudice which outweighed its probative value. To the contrary, the evidence on the issue of identity was needed because it was the only contested issue in the trial.

For these reasons we believe the trial court properly admitted such evidence.

■ The defendant also contends that he was denied his sixth amendment right to the effective assistance of counsel by reason of an alleged *per se* conflict of interest on the part of his court-appointed counsel.

The defendant initially registered his dissatisfaction with the representation of his appointed counsel, J. Peter Ault, in a *pro se* motion to dismiss counsel filed 11 days before defendant's first trial. At a hearing on the motion the defendant informed the court that the basis for his dissatisfaction with his court-appointed counsel stemmed from the fact that (1) he did not like the way counsel spoke to defendant's sister, (2) he wanted a statement of facts from his counsel, not just the police reports, (3) he wanted a preliminary hearing after he had been indicted. When the defendant was informed by the court that

these reasons did not establish a conflict of interest or ineffective representation by counsel so as to warrant his dismissal and the appointment of new counsel, the defendant informed the court that he would then represent himself without counsel.

At this point the defendant informed the court that he had a conversation with his attorney at the jail whereby the issue of possible remuneration was discussed based upon defendant's disclosure that he had $3,800 coming to him from his former job. The defendant contended that his attorney told him he could "fight more" for him if he was paid rather than court appointed. Ault acknowledged that the defendant had mentioned his back pay but denied any remunerative motive or that he would "fight more" for the defendant if he were retained on a private basis.

When the court explained to the defendant that it would not allow him to retain his court-appointed counsel on a private basis, the defendant withdrew his remarks about the alleged colloquy with his attorney regarding possible remuneration.

The State contends the factual claim asserted by defendant as supporting his conflict of interest argument on appeal is therefore missing and we should decline to pass upon the issue where the record is barren of any basis for judgment.

The State further contends that since the issue was not preserved in the defendant's post-trial motion, it was therefore waived for purposes of appeal (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227). In this regard it must be noted that independent counsel entered his appearance on defendant's behalf after he was found guilty but before all post-trial motions were disposed of and the issue, while apparently available to be presented, was not.

Nevertheless, we will pass upon the merit of defendant's argument by noting that it is apparently based upon nothing more than personal animosity articulated in vague and unsubstantiated charges. The defendant's argument fails to establish where defense counsel's loyalty and commitment to his client were undermined by some other interest, pressure or responsibility. *People v. Spicer* (1979), 79 Ill. 2d 173, 402 N.E.2d 169.

Before a reviewing court may reverse a conviction without requiring a showing of prejudice to the defendant, a positive basis must be found for concluding that an actual conflict existed. *People v. Good* (1979), 68 Ill. App. 3d 333, 385 N.E.2d 911.

On the morning of defendant's first trial, he made several *pro se* motions which were denied. He was also informed that he was eligible for an extended-term sentence if he were convicted. Following the

noon recess, the defendant changed his mind and acquiesced in Ault's representation, which extended through both trials. It was not until the defendant was found guilty that he then alleged his court-appointed counsel was incompetent.

On the contrary, the record speaks for itself of a vigorous and skillful defense whereby counsel was able to create enough doubt with regard to the identification of the defendant that a hung jury resulted from the defendant's initial trial. The defendant made no complaint of his court-appointed counsel's effectiveness then.

As a result of defendant's conviction following his second trial, the defendant claims he was denied the effective assistance of counsel because (1) a motion to suppress identification evidence was not filed, and (2) the testimonial competence of minor children was not raised.

To prevail in his argument, the defendant must show that either of the above would have been successful and, as a result, the outcome of the trial would have been different. *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610.

Specifically, the defendant contends that the pretrial photographic lineup was unduly suggestive, thereby tainting the witnesses' in-court identification and creating a substantial likelihood of an irreparable misidentification. (*Foster v. California* (1969), 394 U.S. 440, 22 L. Ed. 2d 402, 89 S. Ct. 1127.) Certainly, complete exactitude of features is not required in photographic identification situations. (*People v. Bey* (1969), 42 Ill. 2d 139, 246 N.E.2d 287.) Since individual facial features and hair styles and length differ, precise correspondence of all subjects in a photographic array is an impossible task. (*People v. Harrell* (1982), 104 Ill. App. 3d 138, 432 N.E.2d 1163.) There is no requirement that all men placed in a lineup must be physically identical. Claims that there are significant differences indicative of suggestiveness between the age, size and appearance of a suspect and other members of a lineup may go to the weight of the evidence and not necessarily to its admissibility. *People v. Kavanaugh* (1980), 85 Ill. App. 3d 783, 408 N.E.2d 23.

The defendant's claim that the photographic array was unnecessarily suggestive is premised on the fact that two of the six photographs depict younger men while the remaining four photographs depict older men. Of the older men, only the defendant's photograph showed a man without glasses. In our opinion the presence or absence of glasses in a photograph would be equivalent to a picture of individuals with or without a beard or mustache or some other facial feature. The question on review is whether all features when viewed *in toto* at once, result in recognition which is made instantaneously or not at all.

*People v. Hefner* (1979), 70 Ill. App. 3d 693, 388 N.E.2d 1059.

We do not believe that when the photographs are viewed from the totality of the images observed that the array was unnecessarily suggestive such as to invalidate the identification. *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819 (photographic identification procedure was not impermissively suggestive even though three of the photographs were of the defendant, and the defendant was the only man shown wearing a hat and sunglasses).

■ Even assuming that the pretrial identification procedure employed was suggestive, it does not necessarily follow that the in-court identification was inadmissible. *(United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926.) The linchpin in determining the admissibility of identification is reliability. *(Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) We have previously discussed the factors which indicate a witness' ability to make an accurate identification and found them to collectively support the in-court identification made in the case at bar. *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.

Under these circumstances, we believe the witnesses were close enough for a sufficient length of time under ideal conditions to adequately observe the defendant and as such, there existed a more-than-adequate basis to support an in-court identification of the defendant, regardless of the alleged suggestiveness in the pretrial photographic identification procedure. *People v. Duarte* (1979), 79 Ill. App. 3d 110, 398 N.E.2d 332.

With respect to defendant's allegation that his court-appointed counsel should have challenged the competency of the Olinski and Bamber boys, we note that the competency of a minor to testify is determined by his degree of intelligence rather than his age. *In re Cruz* (1979), 76 Ill. App. 3d 565, 395 N.E.2d 388.

The issue is whether the minor is sufficiently mature to (1) receive correct impressions from his senses; (2) recollect these impressions; (3) understand questions and narrate answers intelligently; (4) appreciate the moral duty to tell the truth. *People v. Ballinger* (1967), 36 Ill. 2d 620, 225 N.E.2d 10.

We acknowledge and respect the trial court's ability to observe the demeanor of a minor witness and will not reverse the trial court's allowance of such testimony unless there has been either an abuse of discretion or a manifest misapprehension of legal principles. *People v. Goble* (1976), 41 Ill. App. 3d 491, 354 N.E.2d 108.

The record indicates that both boys, although only six and seven years old, knew their names, where they lived, the name of the school

they attended, what grade level they had attained, and that they were missing school to testify. Preliminary questioning from both the prosecution and defense, along with their substantive testimony regarding the incident in the park, clearly indicated their degree of intelligence, observation and ability to recall and recollect what they had seen and heard on the day in question. They both indicated to the trial court that they understood not only what the truth was but the importance of telling the truth in their testimony.

■ While defense counsel was able to point out instances where their testimony was not totally consistent, this would go to their credibility, not their competency. *People v. Brown* (1980), 91 Ill. App. 3d 163, 414 N.E.2d 249.

In the final analysis, the defendant was entitled to competent, not perfect representation. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.) We believe the defendant received competent representation in his defense. The law requires no less and the defendant is entitled to no more. *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.

■ Next the defendant contends that despite the fact that no sentence was imposed upon his conviction for indecent solicitation, the conviction itself must be vacated because it was based upon the same physical act as his conviction for attempt or was at least a lesser included offense of attempt. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

The State correctly points out that separate acts were committed by the defendant in the commission of each offense, *i.e.*, indecent solicitation occurred when the defendant asked the child to perform an act of fellatio, while the offense of attempt (indecent liberties with a child) occurred when the defendant took a "substantial step" (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4, 11—4(a)) towards the commission of the offense by unzipping his pants and exposing his penis to the victim.

While it is clear that separate acts were committed by the defendant, it is equally clear that the act of exposure alone without the request for fellatio would not have established the offense of attempt (indecent liberties) as a matter of law. For these reasons the defendant's conviction for indecent solicitation will be vacated.

■ Defendant's final issue presented for review concerns a challenge to the constitutionality of the Illinois recoupment statute (Ill. Rev. Stat. 1981, ch. 38, par. 113—3.1), which provides in part:

"Payment for Court-Appointed Counsel.

(a) Whenever under either Section 113—3 of this Code or Rule 607 of the Illinois Supreme Court the court appoints counsel to

represent a defendant, the court may order the defendant to pay to the Clerk of the Circuit Court a reasonable sum to reimburse either the county or the State for some or all of the costs of court-appointed counsel. In a hearing to determine the amount of the payment, the court shall consider the affidavit prepared by the defendant under Section 113—3 of this Code and any other information pertaining to the defendant's financial circumstances which may be submitted by the parties. Such hearing shall be conducted on the court's own motion or on motion of the State's Attorney at any time after the appointment of counsel but no later than 90 days after the entry of a final order disposing of the case at the trial level."

Specifically defendant contends that (1) the statute fails to provide for notice of hearing prior to the imposition of a recoupment order, (2) the lack of standards for imposing a recoupment order, and (3) the arbitrary nature of the recoupment order in the case at bar was improper.

Initially we must observe that the defendant here received notice of hearing and was present in court with his attorney when the issue of recoupment was passed upon by the trial court. Furthermore, our review of the record indicates the defendant had nothing to contribute to the proceedings insofar as his financial circumstances were concerned.

Certainly the constitutional guarantee of due process embodies the presumptive requirement of notice and a meaningful opportunity to be heard before the State acts finally to deprive a person of his property. *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612.

In our view the defendant was not deprived of the opportunity to present whatever information he desired on the question of whether recoupment should be ordered, and if so, how much of his attorney fees he would be responsible for. Obviously the defendant's affidavit of assets and liabilities was relevant to such an inquiry, and the defendant was present to supplement the information on his financial condition if he chose to do so. He did not.

As far as the alleged lack of standards is concerned, we note that the statute requires the court to view the totality of the defendant's financial condition for the purpose of determining (1) if the defendant will be able, at some point in time following his incarceration, to contribute to the cost of his legal defense undertaken by court-appointed counsel; (2) if the defendant is found to have the ability to make some future payment, how much will the defendant be able to afford to re-

pay. Contrary to defendant's argument, the recoupment statute does not automatically require reimbursement regardless of the defendant's financial condition.

For these reasons we believe the defendant was afforded due process of law by reason of the notice he received, the opportunity to be heard and the standards the court followed in making the determination that recoupment was proper in this case, *i.e.*, (1) the defendant had $3,800 coming from a previous employer; (2) defendant's wife was gainfully employed; (3) that the defendant and his wife had no children; (4) that the defendant had no significant outstanding debts; (5) that the defendant was given one year following his release from the Department of Corrections to comply with the recoupment order.

■ Finally, the defendant contends that the recoupment order itself was arbitrary in that it provided for reimbursement of $1,000 each for two different public defenders that represented the defendant at various stages of the proceedings. (It should be noted that the reimbursement was directed toward the office of the public defender and not to the individual attorneys involved.) Nevertheless, the defendant contends that an award of $1,000 as reasonable attorney fees for each of two court-appointed attorneys in defense of the felony proceedings was arbitrary. We disagree.

In *People v. Johnson* (1981), 87 Ill. 2d 98, 429 N.E.2d 497, our supreme court established guidelines for determining a reasonable fee award. Among the criteria they recommended would be such factors as normal hourly fee charged for comparable services, the time spent in the case, the nature of the services rendered, the attorney's skill and experience and the complexity of the case and expenses of trial.

In our view, the fact that the recoupment statute does not provide a specific rate at which legal services are billed allows the trial court the discretion it needs to properly apply the various criteria recommended in *Johnson* to the facts and circumstances of the individual case.

For these reasons we believe the recoupment order was properly entered in the case at bar.

The judgment and sentence of the circuit court of Tazewell County is affirmed as to defendants' conviction for attempt (indecent liberties with a child) and defendant's conviction without sentence for indecent solicitation is reversed.

Affirmed in part, reversed in part.

ALLOY and BARRY, JJ., concur.