THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHERYL STRONG, Defendant (Dennis Strong, Defendant-Appellant).

Third District   Nos. 3—85—0402, 3—86—0253 cons.

Opinion filed December 19, 1986.

30

Thomas A. Lilien, of State Appellate Defender's Office, of Ottawa, and Alan R. Bruggeman, of Condon & Bruggeman, of New Lenox, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Edward Petka, State's Attorney, of Joliet (Gary F. Gnidovec and Walter P. Hehner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Dennis Strong, appeals his convictions for unlawful possession with intent to deliver more than 30 grams of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)) and unlawful use of weapons (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(7)). The defendant also appeals from a forfeiture order in favor of the State. (Ill. Rev. Stat. 1985, ch. 56½, par. 1505(a).) On the court's own

motion, we have consolidated the instant causes for review.

From February 19 through February 21, 1985, proceedings were held on the State's complaint for forfeiture. Concerning property seized during a search of the defendant's home on November 15, 1984, the court ordered that certain guns, jewelry, cash, and a coin collection be returned to the defendant. However, the court ordered that $9,273 found in the defendant's bedroom safe and $1,200 found in the defendant's shirt pocket be forfeited to the State.

The defendant subsequently filed a motion to quash his arrest and suppress evidence on the grounds that the warrant obtained to search his house on November 30, 1984, was obtained under false pretenses and was a subterfuge to search for narcotics, not for stolen guns as the warrant indicated. Codefendant Cheryl Strong, the defendant's ex-wife, also filed a motion to suppress evidence. Following a hearing, the trial court denied the suppression motions. Subsequently, Cheryl Strong successfully moved to sever her trial from the defendant's on the basis of antagonistic defenses. The jury found the defendant guilty of both possession with intent to deliver a controlled substance and unlawful use of weapons. The court sentenced the defendant to eight years' imprisonment and fined him $81,000.

The State presented the following evidence in the forfeiture and suppression proceedings. In February of 1984, the Metropolitan Area Narcotics Squad (MANS) received a report through a crime-stoppers organization that Cheryl Strong (Cheryl) had accused the defendant of dealing in cocaine. MANS attempted to call Cheryl to set up an undercover purchase but never made contact with her.

On November 15, 1984, the defendant called the police to his house because Cheryl was causing a disturbance and refused to leave. As the police arrested Cheryl and removed her from the kitchen, she threw a plastic pill bottle across the room. Cheryl told the police that the white powder inside was cocaine.

Later that day, a police officer returned to the defendant's residence and asked the defendant if he would accompany the officer to the police station. The defendant agreed to go and was not placed under arrest. At the police station, two MANS agents told the defendant that they had information about purported cocaine at his house. The defendant gave the agents permission to search the house, signing a consent-to-search form.

In their search of the defendant's house, the MANS agents found some drug paraphernalia and several containers containing small amounts of cocaine. The defendant voluntarily opened a master-bedroom floor safe, and the agents found there $9,273 cash and a single

pill of Phentermine, a schedule IV controlled substance. The agents also found 20 guns in the house. They checked the serial numbers of each of the guns with the police computer and discovered one shotgun was recorded as stolen in an Orland Park theft. The agents seized the $9,273 cash from the safe. The defendant was arrested for theft and drug possession.

Following his arrest, the defendant was searched at the police station. An officer found in the defendant's shirt pocket $1,200 cash and two white lumps tested to be 0.3 gram of cocaine. The police seized the $1,200.

On November 19, 1984, a MANS agent learned from the Orland Park police that three other guns had been taken in the theft involving the stolen shotgun found in the defendant's home. The description of those guns matched other guns seen in the defendant's house on November 15. On November 29, 1984, on the basis of this evidence, the MANS agent obtained a warrant to search the defendant's residence for the stolen guns.

On November 30, 1984, MANS agents executed the search warrant. The agents found two of the three guns described in the warrant, as well as a large number of other guns. They also found a packet of cocaine in the master-bedroom floor safe. The agents seized the cocaine, the guns, a coin collection, and some jewelry.

The defendant testified on his own behalf to the following. On November 15 he was told by an officer that he had to go to the police station. The defendant admitted signing the consent-to-search form after telling the MANS agents that he had nothing to hide. The defendant subsequently withdrew his consent when the agents informed him that any drugs found in his house would be considered his. The defendant did not know he had any stolen weapons in the house. The defendant opened the bedroom safe only after the police threatened to blow it up. Concerning the cash seized, the defendant testified that he received $6,500 a month from the sale of his trucking business. The $9,273 and the $1,200 in his possession came from the sale of that business, and the $1,200 was for the purchase of an all-terrain vehicle for his son for Christmas.

Initially, we will address the arguments presented by the defendant in the forfeiture appeal. His first forfeiture argument is that the court's finding that the $9,273 and the $1,200 were forfeitable items was against the manifest weight of the evidence. The defendant points out that the trial judge found that the State failed to prove that any items seized in the November 15 search, except the $9,273 and the $1,200, were involved with narcotics activity. The defendant

argues that the State also failed to prove that the forfeited cash was linked to the prohibited activity. The defendant further argues that he sufficiently rebutted the presumption that the money was forfeitable. That further argument relies upon his testimony both that the money came from a legitimate source, the sale of his business in the form of $6,500 monthly payments, and that he normally kept large amounts of cash in his house.

Section 505(a)(5) of the Illinois Controlled Substances Act (the Act) provides in relevant part the following:

"All moneys, coin and currency found in close proximity to forfeitable substances, to forfeitable drug manufacturing or distributing paraphernalia, or to forfeitable records of the importation, manufacture or distribution of substances, are rebuttably presumed to be forfeitable under this Act. The burden of proof is upon claimants of the property to rebut this presumption." Ill. Rev. Stat. 1985, ch. 56½, par. 1505(a)(5).

■■ ■ Money, while inherently legal and not contraband *per se,* may be subject to forfeiture if used in an unlawful manner or has a rational relationship to an unlawful purpose. (*People v. Snyder* (1977), 52 Ill. App. 3d 612, 367 N.E.2d 752.) A forfeiture action is an *in rem* proceeding against the items used in the commission of the offense and is considered civil in nature. (52 Ill. App. 3d 612, 367 N.E.2d 752.) Thus, the State must prove the nexus between the forfeitable property and the contraband by a preponderance of the evidence rather than beyond a reasonable doubt. (*People v. Moore* (1951), 410 Ill. 241, 102 N.E.2d 146.) On review this court will not reverse the trial court unless its ruling is against the manifest weight of the evidence. *People v. Snyder* (1977), 52 Ill. App. 3d 612, 367 N.E.2d 752.

The evidence established that the $9,273 at issue was found with a pill containing Phentermine in the master-bedroom floor safe in the defendant's residence. Also found in the defendant's bedroom were small amounts of cocaine and miscellaneous drug paraphernalia. The $1,200 at issue was found along with 0.3 gram of cocaine in the defendant's shirt pocket.

■■ We find that the State proved by a preponderance of the evidence a sufficient nexus between the cash and the illegal substances to raise the presumption under section 505(a)(5) that the cash was forfeitable. Also, the record indicates that the trial judge did not accept the explanation of the defendant to rebut the presumption of forfeiture. We find that the ruling of the trial court ordering forfeiture was not against the manifest weight of the evidence.

■■ The defendant's second argument notes that the forfeiture de-

cision of the trial court did not include specific findings of fact with respect to the forfeited items and their nexus to the illegal criminal activity. The defendant argues that the court's failure to make specific findings of fact resulted from its disregard of competent evidence in favor of the defendant. Regarding the cash forfeiture, the trial judge stated: "$9,273 and the $1,200 I find is subject to forfeiture and so order." The defendant offers and we are aware of no authority requiring findings such as the defendant suggests. We find from the record and the totality of the trial judge's remarks that the judge found sufficient and competent evidence to establish the nexus between the cash and the contraband needed for the forfeiture.

The defendant's next argument is that by waiting over two months to file its complaint for forfeiture, the State failed to comply with section 505(c) of the Act. Section 505(c) provides that where seizure under the Act occurs, proceedings shall be instituted promptly. Ill. Rev. Stat. 1985, ch. 56½, par. 1505(c).

■ In the case at bar, the seizures occurred on November 15, 1984. On November 30, 1984, the defendant filed a motion for return of property. The State filed its complaint for forfeiture on January 17, 1985. We find that the 63 days between seizure of the property and the filing of the forfeiture complaint was prompt within the meaning of the statute. See *People v. Anderson* (1979), 74 Ill. App. 3d 363, 392 N.E.2d 938.

The defendant's final forfeiture argument is that section 505 of the Act is unconstitutional. Specifically, the defendant argues that the statute denied him due process because the rebuttable presumption of forfeiture under section 505(a)(5) unconstitutionally shifts the burden of proof and because the statute fails to set forth provisions for implementing forfeiture proceedings. The defendant also argues that the forfeiture statute violates the fourth amendment of the United States Constitution by not requiring that seizures occur only upon the issuance of a search warrant.

■ We note that the defendant failed to raise in the trial court the unconstitutionality of the forfeiture presumption and of the lack of a forfeiture search-warrant requirement. As these questions are being raised for the first time on appeal, we find that they have been waived. *People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353.

■ Regarding the defendant's argument that section 505(a)(5) is unconstitutional for failing to set forth provisions for implementing forfeiture proceedings, we observe the following. Due process requires that a person receive notice and a hearing before the State acts to deprive him of his property. (*People v. Brewer* (1983), 118 Ill. App. 3d

189, 454 N.E.2d 1023.) In the instant case, the defendant received notice of the forfeiture and a forfeiture hearing. Further, the statute provides for a rebuttable presumption of forfeiture and that property seized is to be held in custody subject only to the order and judgments of the circuit court with jurisdiction over the forfeiture proceedings. We conclude, as did the trial judge, that such language indicates the legislature's intent that forfeiture proceedings be required under the statute. We find that the defendant was not denied due process of law under the forfeiture statute.

We will next discuss the defendant's contentions brought forth in his criminal appeal. The following additional facts are relevant.

At the trial, the State presented the following evidence. On November 30, 1984, approximately 9 or 10 MANS agents went to the defendant's residence to execute a search warrant for stolen guns. When the agents presented the warrant to the defendant, he offered to show them where the guns were located. The agents declined the assistance and proceeded to search the entire house.

Two agents immediately went to the master bedroom where they saw a woman named Charlamane Strom sitting on the bed. When Cheryl Strong exited from the bathroom off the bedroom, an agent immediately entered and observed both a plastic baggie with a white substance floating to the bottom of the toilet bowl and miscellaneous drug paraphernalia. The agent also found in the medicine cabinet a card file containing 4.3 grams of cannabis.

After the agents secured the bedroom area, one of the agents asked Cheryl to locate the guns. Cheryl replied that she did not know the guns' location but that the cocaine was in the safe. The agent then asked the defendant to open the master-bedroom floor safe. According to the agents, the defendant refused and a locksmith opened the safe. Inside the safe the agents found a jewelry box, a letter from Cheryl to her present husband, and a plastic bag containing 767 grams of 94% pure cocaine.

On the basement stairway, an agent found two 7-inch pieces of galvanized pipe with caps on each end. One contained 7.18 ounces of matchheads. Also, each pipe had a drilled hole where a fuse could be placed. In the opinion of a forensic scientist, the matchheads were an explosive substance and a pipe filled with matchheads could explode.

The defendant testified to the following. Concerning the events of November 15, his testimony was essentially the same as he had given at the forfeiture and suppression proceedings. According to that testimony, when he was searched at the police station on November 15, he did not know that the two white chunks in his shirt pocket were co-

caine. The defendant denied ever using or knowingly possessing cocaine.

Regarding November 30, the defendant testified that Cheryl came to his home, accompanied by Strom. The defendant did not want her there but could not keep her away. He knew that Cheryl had brought drugs into the house. Cheryl and Strom went into the master bedroom to get high, something Cheryl had done in the defendant's house before. Also, Cheryl knew how to open the bedroom floor safe because the combination was the defendant's birthdate. The defendant did not supply Cheryl drugs or introduce her to drugs on that day. The defendant denied possessing the packet of cocaine found in the safe. When the agents arrived, the defendant was cooking dinner and keeping his children away from Cheryl and the bedroom.

In further testimony, the defendant acknowledged that he was aware of the presence of the two pipes in his basement. They were made by one of his sons from his first marriage. That son had committed suicide in 1977, and the defendant had kept everything that belonged to his son. He knew that one pipe had once had matchheads inside, but he thought he had emptied the pipes.

On rebuttal, the deputy who searched the defendant at the police station on November 15 testified that he found 12 $100 bills and two chunks of a white substance in the defendant's shirt pocket. The deputy stated the chunks appeared to be "mingled" with the money.

The defendant's first argument addressing his conviction is that the November 30 search warrant was invalid because it was pretextual and a subterfuge to search for drugs. The defendant, relying on *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, argues that the officer-affiant, in obtaining a warrant to search the defendant's house for three stolen guns, showed a reckless disregard for the truth when he failed to inform the issuing judge that the guns had been previously run through a computer check which did not indicate that they were stolen. The defendant further argues that the warrant was a subterfuge to search for drugs.

The State argues initially that the defendant has waived this argument because he failed to specifically raise it in his motion to suppress and in his post-trial motion. We have reviewed the record and find that the defendant sufficiently raised the issue to preserve it for appeal.

■ Under *Franks*, to overcome the presumption of the validity of a search warrant affidavit, the defendant must show by a preponderance of the evidence that the affiant intentionally lied or recklessly disregarded the truth and that if the false statements are excised, the

material remaining is insufficient to establish probable cause. (*Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.) Also, a search warrant affidavit may be invalid because of intentional omission of material facts. A defendant must show that if the omitted fact was included in the affidavit, the affidavit would not support a finding of probable cause. (*People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.) A trial court's denial of a motion to suppress will not be set aside unless it was against the manifest weight of the evidence. *People v. O'Neill* (1985), 135 Ill. App. 3d 1091, 482 N.E.2d 668.

■ We find that the trial court's ruling that the search warrant was validly obtained and executed was not against the manifest weight of the evidence. The defendant failed to prove that had the affiant informed the issuing judge of the prior gun serial-number computer check, the judge would have found insufficient probable cause to have issued the warrant. As the State correctly points out, the omitted item may have merely informed the judge that on November 15 the serial numbers of the guns in question had not been entered into the computer.

Further, we find no subterfuge in the search. MANS agents had conducted the gun serial-number check during the November 15 search. Therefore, we find no inconsistency in the facts that MANS received the subsequent information of other guns stolen in the Orland Park theft and responded to this information by obtaining and executing a warrant to search the defendant's residence for the stolen guns. Finally, the drugs were found in the master-bedroom floor safe, where one of the stolen guns might have been hidden.

The defendant's second argument on his conviction is that he was not proved guilty beyond a reasonable doubt because the State failed to prove that he had knowing and constructive possession of the cocaine. The defendant asserts that Cheryl had access to the master-bedroom floor safe where the cocaine was found and that Cheryl, not the defendant, was near the cocaine and engaged in suspicious activity when the agents entered the residence. The defendant further notes that when the agents arrived, he was innocently cooking and caring for his children.

■ To support a conviction for possession of a controlled substance, the State must prove that the defendant had knowledge of the narcotics and that they were under his immediate and exclusive control. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361.) Where narcotics are found on the premises under the defendant's control, that fact gives rise to the inference that the defendant had knowledge

and control of the narcotics, absent other facts and circumstances which might leave a reasonable doubt as to the defendant's guilt. (23 Ill. 2d 306, 178 N.E.2d 361.) Knowledge and control are questions of fact for the determination of the jury, and we will not disturb the jury's findings unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of guilt. *People v. Atencia* (1983), 113 Ill. App. 3d 247, 446 N.E.2d 1243.

■■■ The instant cocaine was found in the master-bedroom floor safe in the defendant's home. Drug paraphernalia was found nearby. The jury was not required to accept the defendant's testimony concerning Cheryl's access to, and possession of, the cocaine. We find sufficient evidence to prove beyond a reasonable doubt that the defendant possessed the cocaine.

The defendant's third argument is that the trial court denied him a fair trial by failing to give the second paragraph of the Illinois Pattern Jury Instructions for circumstantial evidence. Recently, in *People v. Bryant* (1986), 113 Ill. 2d 497, the supreme court ruled that the instant instruction should not be given. In light of *Bryant*, the defendant concedes and we agree, the trial court was not required to give the instruction.

■■■ Next, the defendant contends that he was denied a fair jury trial on his unlawful-possession charge by the repeated misconduct of the prosecutor during the questioning of witnesses and in closing argument. The State argues that we should not consider a number of these alleged instances of misconduct because the defendant failed to make timely objections at trial. However, a reviewing court may consider errors to which no objection was raised when they affect substantial rights or are sufficiently prejudicial to deny a defendant a fair trial. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629.) We choose to review the defendant's contentions.

■■■ Initially, the defendant raises two allegations of error which we find are without merit. The first is that he was unduly prejudiced when the State introduced evidence that on November 30, 1984, the MANS agents were searching for stolen guns. We find no error in the presentation of the evidence which both tended to show the defendant's intent and was consistent with an intent to distribute cocaine. *People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821; *People v. Schaefer* (1985), 133 Ill. App. 3d 697, 479 N.E.2d 428.

The defendant also argues that the State erred in asking him on cross-examination whether he had ever possessed cocaine on his person or whether authorities found cocaine on his person when he was

arrested on November 15. We find nothing improper about the above line of impeachment.

The defendant presents other assignments of prosecutorial error which we find do have merit. During the cross-examination of defense witness Desiree Chavez, the State asked if the defendant had ever supplied her with drugs. Chavez replied that he had not. Thereafter, during the cross-examination of the defendant, the prosecutor asked whether Cheryl was at his house on November 30 because he had told her that he had cocaine for her to get high on. The defendant responded in the negative. Several questions later, the prosecutor queried: "As a matter of fact, Mr. Strong, you're the one who supplied her with drugs?" The defendant replied that he was not. The defendant was asked if he had ever used cocaine. He replied that he had not. Later in cross-examination, the prosecutor asked the defendant if he had ever freebased or ever been burned while freebasing cocaine. The defendant answered both questions negatively.

■■■ It is highly improper for a prosecutor to raise unsupported allegations of bad conduct by a defendant so as to substitute insinuation and innuendo for proof. (*People v. Shipp* (1977), 52 Ill. App. 3d 470, 367 N.E.2d 966; *People v. Payton* (1967), 82 Ill. App. 2d 51, 227 N.E.2d 87.) A review of the record indicates that there is no evidence to support the instant questions to Chavez and the defendant. The allegations raised by the prosecutor were unsupported and highly improper.

The next assignments of error concern the prosecutor's closing remarks. During his closing argument, the prosecutor described the defendant as "a drug dealer" and "a very high roller." The prosecutor then argued that the defendant would make a large, nontaxable profit by selling the drugs. The prosecutor further argued that the defendant had a large amount of money in the safe on November 15 and had a large amount of cocaine but no money in the safe on November 30, apparently suggesting that the defendant used the money in the safe to purchase the later-discovered cocaine in the safe. The prosecutor also argued that the defendant had provided Cheryl with cocaine.

■■■ It is fundamental that statements of fact not based on the evidence may not be argued before the jury. (*People v. Carlson* (1982), 92 Ill. 2d 440, 442 N.E.2d 504.) Reversible error exists where there are reasonable grounds to believe that the jury was prejudiced by improper remarks. (*People v. Allen* (1959), 17 Ill. 2d 55, 160 N.E.2d 818.) We may consider the cumulative impact of improper prosecutorial remarks. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d

629.) Further, the court's admonitions for the jury to disregard improper insinuations may in some instances be insufficient to eliminate such errors from the minds of the jurors. *People v. McCray* (1978), 60 Ill. App. 3d 487, 377 N.E.2d 46.

We find that the prosecutor's instant comments constituted misconduct. In disapproving the comments, we observe the following. First, the record is devoid of direct evidence that the defendant sold drugs or was a drug dealer. Second, the tax consequences of selling drugs were irrelevant and not of record. Third, on November 15, the MANS agents seized the money in the bedroom safe, making it unavailable to the defendant. Finally, the defendant denied that he had ever supplied Cheryl with drugs.

■■ We find the cumulative impact of the above instances of prosecutorial misconduct during both cross-examination and closing argument could well have prejudiced the jury when it convicted the defendant, and consequently deprived him of a fair trial on his drug charge. We therefore reverse the defendant's conviction for unlawful possession of a controlled substance with intent to deliver and remand this cause for a new trial.

Regarding his unlawful-use-of-weapons conviction, the defendant argues that the indictment did not charge him with a criminal offense. The indictment charged that the defendant "committed the offense of UNLAWFUL USE OF WEAPONS (Class 3 Felony) in that, he knowingly possessed a container containing an explosive substance of over one-quarter ounce in violation of Chapter 38, Section 24—1(a)(7) ***." The defendant argues that by failing to include the language from section 24—1(a)(7) that the defendant possessed "any bomb, bombshell, grenade, bottle or other container containing an explosive substance of over one-quarter ounce for like purposes, such as, but not limited to, black powder bombs and Molotov cocktails or artillery projectiles," the indictment charged the defendant with nothing more than an innocent act. The defendant concedes that the sufficiency of the indictment was not raised at trial.

■■ When raised for the first time on appeal, the sufficiency of an indictment will not be determined by whether its form follows the precise language of the statutory provision. (*People v. Gilmore* (1976), 63 Ill. 2d 23, 344 N.E.2d 456.) It is sufficient if the indictment apprised the defendant of the precise offense charged with sufficient specificity for him to prepare his defense and bar future prosecutions arising out of the same conduct. *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437.

■■ We find that while the indictment was poorly drafted, it

cited the statute under which the defendant was charged and sufficiently informed the defendant of the charged violation to both protect him from double jeopardy and enable him to prepare a defense.

▪▪ The defendant's final contention is that he was improperly sentenced on both convictions. The court sentenced the defendant to eight years' imprisonment without specifically allocating a sentence to either separate conviction. The defendant asserts that an eight-year sentence on the weapons conviction would be improper where the unlawful-use-of-weapons charge is a Class 3 felony, which carries a two-to-five year sentence, and where there is no basis here for an extended term. (Ill. Rev. Stat. 1985, ch. 38, pars. 24—1(b), 1005—8—1(a)(6).) We agree with the defendant. On remand, the trial court is instructed to impose a clear, proper sentence for the weapons conviction.

Accordingly, the sentence is vacated; the conviction for unlawful use of weapons is affirmed and remanded for resentencing; the conviction for possession of a controlled substance with intent to deliver is reversed and remanded for a new trial.

Affirmed in part, reversed in part and remanded.

SCOTT, P.J., and WOMBACHER, J., concur.