THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEROY EPPS, Defendant-Appellant.

Second District   No. 82—0579

Opinion filed May 15, 1986.

HOPF, J., concurring in part and dissenting in part.

Daniel D. Yuhas, Charles Schiedel, and Beth Katz, all of State Appellate Defender's Office, of Springfield, and G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

A jury found defendant, Leroy Epps, guilty of the offenses of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1)) and attempted murder (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(a)). Defendant was subsequently sentenced to a term of natural life imprisonment for the murder and a 60-year extended term of imprisonment for the attempted murder, with the sentences to be served consecutively.

On appeal, defendant raises three issues for this court's consideration: (1) that he was denied a fair trial because the trial court incorrectly determined that a 6-year-old prosecution witness was competent to testify; (2) that certain remarks of the prosecutor during closing argument denied him due process of law; and (3) that the trial court improperly made the 60-year extended-term sentence of imprisonment for attempted murder consecutive to the term of natural life imprisonment imposed for murder.

The body of the murder victim, Teresa Phillips, was found on the floor in the living room of her North Chicago apartment on the morning of March 5, 1982. Ms. Phillips' young son, Jimmy, who also lived in the apartment, had been struck in the head with a hammer, but survived the blow. Defendant was arrested later that same day and subsequently charged with the murder of Teresa Phillips and the attempted murder of Jimmy Phillips.

As defendant has not raised any issue on appeal relative to the sufficiency of the evidence, it is only necessary to detail those facts relevant to the issues raised.

Jimmy Phillips, who was six years old at the time of the jury trial, was a key witness for the prosecution. Before Jimmy testified to the events of March 5, he was examined outside the presence of the jury to determine whether he was competent to testify. On direct examina-

tion, Jimmy knew his first and last names, that he was living with his father, the school he attended and his present and past teachers' names, the grade he had just completed as well as the grade he was entering, and his age and birthday. He recited the alphabet and counted to 16. Occasionally Jimmy either gave no response or responded by nodding his head. After the State's Attorney told him he would have to say yes or no, however, he gave verbal answers to virtually all questions put to him. Jimmy said that he knew what telling the truth was and what telling a lie was, that it is good to tell the truth, and that he would tell the truth to the jury. When asked if he told lies or if he had ever been in trouble for lying, Jimmy answered in the negative.

On cross-examination Jimmy did not answer correctly when asked by defense counsel what day it was, and the number of days in a week and weeks in a month, but when asked, "Jimmy, what is a lie?", he responded, "When you don't tell the truth." Jimmy also said he had never told a lie.

Before the trial judge ruled on the question of Jimmy's competence, he asked if anybody wanted to say anything. Both the prosecutor and defense counsel answered no. The court then found Jimmy to be a competent witness. Defense counsel noted for the record that Jimmy responded appropriately only to those questions for which he was prepared.

Upon taking the stand to testify, Jimmy was asked several questions by the judge. He again answered that he understood the difference between telling the truth and telling a lie and that he would tell the truth. When asked, "What does it mean to tell the truth ***?" Jimmy said, "I don't know," but when asked what it means to tell a lie, he responded, "When you don't tell the truth."

Jimmy then testified that during the night Teresa was murdered he woke up and saw defendant and that defendant hit him with a hammer while he was in his bed. He indicated where defendant had struck him by touching his head with his hand. Jimmy identified defendant in court. He also identified Teresa's eyeglass case which had been similarly identified earlier by Teresa's sister.

After Jimmy's testimony, defense counsel moved for a mistrial on the basis that Jimmy was an incompetent witness. The motion was denied.

■■ Defendant's first contention is that the trial court incorrectly determined that six-year-old Jimmy Phillips was competent to testify. The State responds initially that defendant waived this issue by not objecting in the trial court to the competency determination. While

defense counsel did not specifically object to Jimmy's testimony prior to its being given before the jury, it is evident that the preliminary competency hearing outside the presence of the jury was to determine his competency to testify and counsel did move for a mistrial on the basis that the witness was incompetent after Jimmy testified in court. The issue was preserved for appeal under these circumstances.

■ With respect to the question of Jimmy Phillips' competency to testify, the controlling factor that determines a youngster's ability to testify is the degree of a child's intelligence, rather than mere chronological age. A child may testify if he is sufficiently mature to receive correct impressions by means of his senses, to recollect and narrate intelligently, and to appreciate the moral duty to articulate the truth. (*People v. Garcia* (1983), 97 Ill. 2d 58, 75, 454 N.E.2d 274; *People v. Brewer* (1984), 127 Ill. App. 3d 306, 310, 468 N.E.2d 1242.) A court of review will not reverse the trial court's decision to allow a child to testify unless the lower court abused its discretion (*People v. Garcia* (1983), 97 Ill. 2d 58, 75, 454 N.E.2d 274), or unless it is clear that the court misapprehended a legal principle (*People v. Ballinger* (1967), 36 Ill. 2d 620, 622, 225 N.E.2d 10).

The record of the competency hearing reflects that Jimmy Phillips knew his name, where and with whom he lived, the name of the school he attended and the names of his teachers, what grade level he had attained, his birthday and current age. He could recite the alphabet and knew how to count. He was not able to give accurate responses to questions concerning the day of the week the hearing took place, how many days there are in a week and how many weeks there are in a month. Although Jimmy responded that he did not know what it meant to tell the truth when asked the question by the court, he consistently responded to the prosecutor, defense counsel, and the court that he understood the difference between telling the truth and telling a lie, that telling a lie is, "When you don't tell the truth," that he had never told a lie, and that he would tell the truth in court.

During the trial Jimmy recalled waking up in the middle of the night and described what happened to him. He pointed to the place where he had been struck. He identified defendant as his assailant and immediately recognized an eyeglass case as his mother's.

■ Based on the responses of the six-year-old witness to the questions of counsel and the court, we conclude that the trial court did not abuse its discretion when it allowed Jimmy Phillips to testify. An examination of the record of the preliminary competency hearing discloses that the boy possessed sufficient maturity, intelligence, and awareness to satisfy the test the courts have prescribed before a

young child may testify at trial. (See, *e.g., People v. Ballinger* (1967), 36 Ill. 2d 620, 622, 225 N.E.2d 10.) Also, the young witness' testimony during the trial clearly demonstrated that he possessed an adequate degree of intelligence, observation, and ability to recollect what he had seen on the night in question. See *People v. Brewer* (1983), 118 Ill. App. 3d 189, 197-98, 454 N.E.2d 1023.

■ Defendant next argues that during closing arguments the prosecutor misstated the law, made highly inflammatory comments to the jury, and interjected his personal opinion about the truth of the witness' testimony. Defendant concludes that the cumulative effect of those improper remarks denied him a fair trial. Specifically, defendant cites the prosecutor's repeated encouragement and urging to the jury to be reasonable and to determine whether the State's case was reasonable or whether defendant's story was reasonable. Defendant argues that such comments distorted the burden of proof for the jury by implying that they need find only that the State had made out a reasonable case against defendant.

Defendant also characterizes as inflammatory the prosecutor's remarks about Jimmy Phillips being orphaned and finding his mother's blood-soaked body, and other remarks which referred to the defendant as a "cunning spider" who "spun his web" of alibis. Defendant further contends the prosecutor interjected his personal opinion of the evidence and the witnesses' testimony.

An examination of the State's closing argument in the case at bar reveals that, with one exception, defense counsel did not object during trial to the propriety of the remarks the defendant now challenges in this court. Nor did defendant raise any allegation of prosecutorial misconduct concerning closing argument in his post-trial motion. Therefore, we consider the issues waived. *People v. Friesland* (1985), 109 Ill. 2d 369, 374-75, 488 N.E.2d 261.

■ Supreme Court Rule 615(a)( 87 Ill. 2d R. 615(a)) provides an exception to the waiver rule where there have been plain errors or defects affecting substantial rights. We have carefully reviewed the prosecutor's arguments complained of and find no prejudicial error which would justify reversal. A prosecutor's closing argument may denounce the accused, reflect upon witness credibility, and argue the fearless administration of the law if it is based on facts in the record or inferences fairly drawn from these facts. (*People v. Bryant* (1983), 94 Ill. 2d 514, 523-24, 447 N.E.2d 301.) The prosecutor's comments here were either within the bounds of proper closing argument or, even if arguably improper, did not constitute a material factor in the convictions.

■ The defendant's final assertion of error is that the trial court erred when it imposed consecutive sentences in this case. More specifically, the defendant maintains that once the court sentenced him to a term of natural life imprisonment for murder, which is without the prospect of future release, the imposition of a consecutive 60-year extended-term sentence for attempted murder was not necessary to protect the public from future criminal conduct on the part of the defendant.

As was stated earlier, the trial court sentenced the defendant to a term of natural life imprisonment based upon the murder conviction and then pronounced the 60-year extended term for the attempted murder conviction. The trial court found that a consecutive sentence was necessary "to protect the public from further criminal conduct by this defendant."

Section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(b)) provides:

> "The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record."

Section 5—8—4(b) requires only that the record demonstrate that the trial court was of the opinion that a consecutive sentence was necessary for the protection of the public. *People v. Steppan* (1985), 105 Ill. 2d 310, 322, 473 N.E.2d 1300; *People v. Hicks* (1984), 101 Ill. 2d 366, 375, 462 N.E.2d 473.

There can be no question that the trial judge intended the sentences to be served consecutively and was of the opinion that a consecutive sentence was necessary for the protection of the public, as indicated by his comments which follow:

> "The Court finds that under the applicable sections that the defendant [was] at least 17 years of age when the crime was committed, and that the offense was accompanied by exceptionally heinous and brutal behavior indicative of wanton cruelty. The Defendant's conduct was outrageous, hate filled and shocking and therefore heinous. The brutality is evidenced by the number of blows and savage method of killing the victim.
>
> The Court further finds that the felony, attempt murder, was committed against a person under 12 years of age at the time of the offense which is a factor in considering the extended term. The attempt murder of a young person for the

purpose of disposing of all witnesses to the crime of murdering the mother is considered by this Court as brutal, heinous behavior indicative of wanton cruelty.

The Defendant may have been motivated for money or to get drugs, but when he had murdered the mother, he had what was represented here that he wanted. But when he ascended the steps to the child's bedroom to murder the child, there was absolutely no need from what I can find in the evidence for him to do that for any purpose whatsoever other than for the cold blooded intelligent purpose of supposedly eliminating all those who could possibly identify him for the wrong he had done. Such conduct is exceptionally aggravating and indicative of an extended term sentence.

In many cases when there is murder and attempt murder, the sentences run concurrently, or together. Only under exceptional circumstances would the Court have them run consecutively. But I believe that when he completed that first murder and walked up the steps to kill the remaining witness to what had gone on, it was such a difference in the two crimes that they should be considered separately; therefore, I have looked into the consecutive sentence portion of our law.

Having regard for the nature and circumstances of the offense and the history and character of the defendant, it is the opinion of the Court that consecutive terms are required to protect the public from further criminal conduct by this defendant. That finding is necessary in order to have consecutive terms.

The law provides that the Court may sentence the defendant to a term of natural life if the Court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The court has thus found.

The court finds that for the crime of murder, the Defendant LeRoy Epps should be sentenced to life imprisonment. The court further finds that a term of extended term of 60 years should be imposed for the crime for attempt murder to be consecutive.

I recognize the public might say why can you have a consecutive term to a life term. I think that it's necessary that the Court speaks in this case so when the Appellate Court looks at the file, as they rightfully should to make sure no mistakes have been made here, they under[stand] the Court's feelings that this Defendant has forfeited his rights to walk around as a free man, as the State's Attorney said.

It is the judgment of this Court that the Defendant having [been] adjudged guilty of the offense of murder, he is hereby sentenced to the Department of Corrections of the State of Illinois to a term of life imprisonment.

It is the further judgment of this Court that the Defendant having been adjudged guilty of the offense of attempt murder, he is hereby committed to the Department of Corrections of the State of Illinois for a term of 60 years. He is hereby remanded to the custody of the Sheriff of Lake County to be transported to the Department of Corrections within 10 days."

Defendant argues that once a natural life sentence has been imposed, no useful purpose is served for the protection of the public by the imposition of a sentence consecutive to the natural life sentence. While on the surface this may appear to be so, this conclusion has neither statutory nor logical support. Section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4) provides for concurrent and consecutive sentences and nowhere does the statute prohibit the imposition of a consecutive sentence as imposed here. In fact, consecutive terms of natural life imprisonment (see *People v. Bush* (1981), 103 Ill. App. 3d 5, 430 N.E.2d 514) and consecutive terms of natural life imprisonment and a determinate term (see *People v. Wilson* (1985), 138 Ill. App. 3d 513, 485 N.E.2d 1264) have been imposed by trial courts in reported cases although the issue presented here has not been raised. In short, there is no distinction in the statute which prohibits the consecutive sentences imposed here.

Practically, as well, a sentence consecutive to a natural life sentence may be of consequence under certain circumstances. Should the legislature later modify a natural life sentence to a term of years, or should the Governor commute a natural life sentence, or should the appellate court reduce a natural life sentence pursuant to its authority under Rule 615(b)(4), a defendant serving a consecutive sentence of imprisonment would still serve a longer term than if the sentence was concurrent. A trial judge's imposition of consecutive sentences to protect the public would be thwarted by application of the analysis set forth by the defendant. Moreover, the legislature has apparently recognized that consecutive sentences serve a useful purpose for it has provided for mandatory consecutive sentences in certain circumstances (see Ill. Rev. Stat. 1983, ch. 38, pars. 1005—8—4(f), (g); see also Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—4(h), (i) (added by Pub. Act 84—945 sec. 3, eff. Sept. 25, 1985)) without any limitation on the length or nature of the sentence involved.

We therefore conclude that a sentence consecutive to a natural life

sentence is authorized by statute and was properly imposed here. Defendant has not raised on appeal the propriety of imposing an extended-term sentence for attempted murder where there is also a natural life sentence for murder (see Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—2(a)), and we need not consider any conceivable argument in that regard not presented. See *People v. Neal* (1985), 111 Ill. 2d 180, 203-05, 489 N.E.2d 845; and *People v. Jordan* (1984), 103 Ill. 2d 192, 203-07, 469 N.E.2d 569.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT, J., concurs.

JUSTICE HOPF, concurring in part and dissenting in part:

I concur with the majority's opinion finding no trial error. However, I dissent as to the majority's upholding of the lower court's imposition of a sentence of 60 years for attempted murder, to be served consecutively with his term of natural life imprisonment. I would modify the sentence, in accordance with our authority in Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)), to have the 60-year extended-term for attempted murder run concurrently with his sentence of natural life imprisonment.

The propriety of a consecutive sentence pursuant to section 5—8—4 of the Unified Code of Corrections (the Code) (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4) to follow a sentence of natural life imprisonment under section 5—8—1(a)(1)(b) of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(b)) has never been specifically dealt with, and would constitute a question of first impression in Illinois. In *People v. Wilson* (1985), 138 Ill. App. 3d 513, 485 N.E.2d 1264, and *People v. Bush* (1981), 103 Ill. App. 3d 5, 430 N.E.2d 514, a sentence consecutive to a term of natural life was imposed. However, the inherent invalidity of such a sentence was never raised. *Bush*, though close to the case at bar, dealt with the question whether under the facts of that case the consecutive sentences were excessive, and, further, the question of the constitutionality of a natural life imprisonment sentence as it related to article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 11).

The trial court, in sentencing the defendant, stated that the appellate court "under[stands] the Court's feeling that this Defendant has forfeited his rights to walk around as a free man." I have no quarrel

with this position, but state that that is why we have a sentence of natural life imprisonment, section 5—8—1(a)(1)(b) of the Code. Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(b).

Section 5—8—4(b) of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(b)) provides:

> "The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record."

The imposition of a sentence such as we have here flies in the face of the language of section 5—8—4(b) and serves no useful purpose. The defendant has no prospect of future release and consequently poses no future threat to society. A reasonable implication of legislative intent in the formulation of the statute would be that the defendant would have some possibility of inflicting further criminal conduct upon the public.

I do not agree with the majority that we can speculate as to what future legislatures, courts or governors may do towards modifying life sentences, including this one.

In addition, such a sentence would conflict with section 5—8—4(c)(2) of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(c)(2)), which prescribes that "the aggregate of consecutive sentences [the defendant could receive in this case] shall not exceed the sum of the maximum terms authorized under Section 5—8—2 for the 2 most serious felonies involved." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(c)(2).) By so sentencing, the court could be violating this statute by a sentence that exceeds the sum of the aggregate maximum extended terms set forth in section 5—8—2 of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—2).

The trial judge in pronouncing defendant's sentences stated: "I recognize the public might say why can you have a consecutive term to a life term." This recognizes that there is a certain incongruity to such type of sentencing and an incongruity that does not enhance respect for the system.

I would modify.