THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD COOKSON, Defendant-Appellant.

Fourth District    No. 4—01—0765

Opinion filed December 2, 2002.

COOK, J., dissenting.

788

Daniel D. Yuhas and Robert N. Markfield, both of State Appellate Defender's Office, of Springfield, for appellant.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

A Sangamon County jury found defendant, Donald Cookson, guilty of predatory criminal sexual assault of a child and aggravated criminal sexual abuse. 720 ILCS 5/12—14.1(a)(1), 12—16(c)(1)(i) (West 1998). The trial court sentenced defendant to 25 years' imprisonment for predatory criminal sexual assault and imposed no sentence for aggravated criminal sexual abuse. The issues on appeal are whether (1) the trial court properly excluded evidence that the child victim had made allegations of sexual abuse against another person that the Department of Children and Family Services (DCFS) determined to be unfounded, (2) the trial court committed an abuse of discretion in admitting evidence of the complainant's out-of-court statements pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/115—10 (West 2000)), (3) the trial court erred in finding the child complainant competent to testify, and (4) the jury's finding of guilty of aggravated criminal sexual abuse must be vacated because it is a lesser included offense of predatory criminal sexual assault. We affirm.

Although defendant challenges the admissibility of some evidence, he does not contest that, if the trial court properly admitted the evidence, the jury could reasonably find him guilty of predatory criminal sexual assault beyond a reasonable doubt. If admissible, the evidence would establish that defendant, who was 17 years of age or older, had anal sex with his 7-year-old stepdaughter A.C. (born October 6, 1992) on two occasions between March 1 and August 31, 1999.

■ We initially consider whether the trial court erred in finding A.C. competent to testify. Irrespective of age, every person is qualified to be a witness (725 ILCS 5/115—14(a) (West 2000)) unless she is incapable of (1) expressing herself concerning the matter so as to be understood, either directly or through interpretation, or (2) understanding the duty of a witness to tell the truth (725 ILCS 5/115—14(b) (West 2000)). The party requesting a determination of the competency of a witness to testify has the burden of proof. 725 ILCS 5/115—14(c)

(West 2000). The determination of witness competency rests in the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *People v. Sutherland,* 317 Ill. App. 3d 1117, 1125, 743 N.E.2d 1007, 1013 (2000). This deference is given because the trial court, unlike the reviewing court, has the opportunity to observe the demeanor, appearance, and conduct of the witness. *People v. Dempsey,* 242 Ill. App. 3d 568, 584, 610 N.E.2d 208, 218 (1993).

■ In this case, the trial court conducted a hearing with regard to A.C.'s competency to testify on May 21, 2001. At that time, A.C. was eight years old. After listening to and observing A.C. testify, the trial court concluded that she had the ability to express herself so as to be understood and that she understood the duty to tell the truth. She testified that she did not know the rules about being in court but stated that she would tell the truth when she testified at trial. She related that she had gotten in trouble for lying in the past. As examples of lying, she stated that she had gotten in trouble for lying when she had, in fact, hit her brother, and that her brother had once lied about not having a cookie.

In *Sutherland,* the court found no basis for disturbing the finding that a six-year-old child was competent to testify when she knew the difference between lying and telling the truth and said she would tell the truth. *Sutherland,* 317 Ill. App. 3d at 1125, 743 N.E.2d at 1013; see *Dempsey,* 242 Ill. App. 3d at 583-84, 610 N.E.2d at 217-18 (a nine-year-old sexual abuse victim was competent to testify); *People v. Hoke,* 213 Ill. App. 3d 263, 271-72, 571 N.E.2d 1143, 1148 (1991) (two six-year-old children were found competent to testify).

Defendant's argument relies on the rules regarding competency of a child witness put forth in *People v. Epps,* 143 Ill. App. 3d 636, 639, 493 N.E.2d 378, 380 (1986) ("[a] child may testify if he is sufficiently mature to receive correct impressions by means of his senses, to recollect and narrate intelligently, and to appreciate the moral duty to articulate the truth"). The *Epps* decision, however, predates Public Act 85—1190, which added section 115—14 to the Code of Criminal Procedure effective January 1, 1989. 725 ILCS 5/115—14 (West 2000). In *People v. Trail,* 197 Ill. App. 3d 742, 748, 555 N.E.2d 68, 72 (1990), this court interpreted the new section as expressing a legislative intent to discard the prior body of law dealing with witness competency, particularly the more rigid of the former rules. In *Hoke,* we reaffirmed that interpretation of section 115—14. *Hoke,* 213 Ill. App. 3d at 272, 571 N.E.2d at 1148. Defendant presents no valid argument for reconsidering our prior interpretation. We have reviewed the testimony of A.C. at the competency hearing and conclude that the trial court did not commit an abuse of discretion in finding her competent to testify.

Through several witnesses, the State was allowed to introduce out-of-court statements made by A.C. to those witnesses concerning defendant's anal sexual assaults on her. These statements were made to DCFS caseworker Dorothy Rice on January 29, 2000; A.C.'s foster parent Laverne Landers on January 30, 2000; and DCFS investigator Timothy Gonzalez and City of Springfield Detective Richard Wiese on January 31, 2000. Defendant challenges the admissibility of this testimony introduced pursuant to section 115—10 of the Code of Criminal Procedure. The standard of review is whether the trial court committed an abuse of discretion. *People v. Williams*, 193 Ill. 2d 306, 344, 739 N.E.2d 455, 475 (2000).

■ Section 115—10(a) authorizes the trial court to admit hearsay testimony of out-of-court statements made by children under the age of 13 who are victims of offenses defined in sections 12—13 through 12—16 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12—13 through 12—16 (West 2000)). 725 ILCS 5/115—10(a) (West 2000). As previously noted, defendant was charged with violating sections 12—14.1(a)(1) and 12—16(c)(1)(i) of the Criminal Code, and he does not challenge the application of section 115—10 to this case. Section 115—10(b) provides that testimony about such an out-of-court statement is admissible only if (1) the court finds, after conducting a hearing outside the presence of the jury, that the time, context, and circumstances of the statement provide sufficient safeguards of reliability, and (2) the child either (a) testifies at the proceeding or (b) is unavailable to testify as a witness and there is corroborative evidence of the act that is the subject of the statement. 725 ILCS 5/115—10(b) (West 2000). In this case, A.C. testified, and defendant's challenge to the admissibility of the evidence focuses on the trial court's findings concerning the sufficiency of the safeguards of reliability.

At the section 115—10 hearing conducted May 21, 2001, the trial court heard the testimony of Landers, Wiese, and Gonzalez. Rice testified at a May 25, 2001, hearing.

Rice testified that, on January 29, 2000, after she took A.C. into protective custody, she took the child for a required health screening. The screening did not involve a gynecological examination. After the examination, Rice drove A.C. to the emergency foster home. Rice had a conversation with the child about marijuana because there had been references to marijuana and cocaine when she picked up A.C. at the police station. A.C. said defendant gave her marijuana, ran bath water, put her in the tub, and "humped on her." She said he put his "thingy" in her butt. Rice had not asked A.C. any questions about sexual abuse. A.C. just blurted it out. Rice never met or talked to Landers.

Landers, a registered nurse, testified that in response to a general

question inquiring whether everything was going okay, A.C. said, "I am never going home. I am never going home. I'm not going back to Don and Judy. Don fucked me in the ass, and Judy ate my pussy." At the time of this statement, A.C. had been sitting and coloring at the kitchen table. A.C. was then seven years old. Landers did not make further inquiry of A.C. on this subject. On cross-examination, Landers testified that A.C. had, on other occasions, indicated a preference to remain in the foster home.

Wiese testified that the interview of A.C. he and Gonzalez conducted took place in a child-friendly room at the Child Advocacy Center. A.C. used slang terms such as "boobs," "dick," and "butt" to express what occurred and stated that defendant put his penis into her anus, pointing to the crack in the buttocks of an anatomically correct drawing. A.C. described two incidents, one occurring in the bathroom and one in the bedroom.

When the interview began, Wiese asked A.C. if she knew why she was there, and she stated because of something that Don and Judy had done to her. A.C. said that one of these incidents occurred in a gray house and the other in a pink house. Wiese was not sure in which house the bathroom incident occurred. At one point, A.C. said that these kinds of things happened all the time, and then later she said these were the only two times. She did not indicate whether defendant had ejaculated.

Gonzalez testified that A.C. indicated she did not want to reside with Don and Judy for what they did to her. At that point, A.C. was asked what they did to her. Gonzalez's testimony followed the same tenor as the testimony given by Wiese. According to Gonzalez, the incidents occurred when A.C. was six, and her description of the instances of sexual abuse he deemed "remarkable" for a child of that age.

■ The State bears the burden of proving that the statements were reliable and not the result of adult prompting or manipulation. *People v. Zwart*, 151 Ill. 2d 37, 45, 600 N.E.2d 1169, 1172 (1992). Among the factors to be considered in making a reliability determination are (1) the child's spontaneity and consistent repetition of the incident, (2) the child's mental state, (3) use of terminology unexpected of a child of a similar age, and (4) the lack of motive to fabricate. *People v. West*, 158 Ill. 2d 155, 164, 632 N.E.2d 1004, 1009 (1994); *People v. Simpkins*, 297 Ill. App. 3d 668, 676, 697 N.E.2d 302, 307 (1998). In *Simpkins*, this court also indicated that the court should examine whether the statement was the product of suggestive interview techniques when there had been successive interviews. *Simpkins*, 297 Ill. App. 3d at 677-78, 697 N.E.2d at 308.

■ Defendant raises six points of contention with the admission of A.C.'s out-of-court statements. We initially address the fact that, although a video recording system was available in the room used to interview A.C., Wiese and Gonzalez did not record the interview. Taping an interview provides a better means for assuring that there was no adult prompting or manipulation involved, and the failure to do so may be considered a negative factor when considering reliability. *Simpkins*, 297 Ill. App. 3d at 677-78, 697 N.E.2d at 308. However, in light of the other factors, we decline to overturn the trial court's reliability ruling on this basis alone.

A.C.'s statements to Landers and Rice were spontaneous and her descriptions of the incidents consistent in each of these statements. She also employed descriptive terminology unexpected from a seven year old. Defendant argues that the reliability is diminished because five months passed between the statements and the occurrences. Delays in reporting sexual acts do not automatically render a child victim's statements inadmissible. *Zwart*, 151 Ill. 2d at 46, 600 N.E.2d at 1173.

Defendant also argues that (1) the results of A.C.'s examination by Dr. Victoria Nichols-Johnson on February 3, 2000, provided no support for the statements about frequent anal intercourse, (2) during the medical examination A.C. denied defendant had anal intercourse with her but claimed he subjected her to vaginal intercourse, (3) her statement to Wiese and Gonzalez that this type of behavior occurred all the time was contradicted by her statement that it happened only twice, and (4) A.C. had a motive to lie because she did not wish to return to the care of defendant and her mother.

The argument that the medical examination did not provide support for A.C.'s assertions does not determine the admissibility of her statements in light of the fact that A.C. testified. The remaining points of contention raised by defendant are matters that go to the weight to be accorded the statements rather than to a determination of the admissibility of the statements. Nichols-Johnson testified for the State at trial, and defendant had the opportunity to cross-examine her on the statements made by A.C. to her and the results of the examination. We find no abuse of discretion in admitting testimony of A.C.'s out-of-court statements.

■ We next consider whether the trial court committed an abuse of discretion by refusing to admit evidence that A.C. made an allegation of sexual abuse against Richard Aston that DCFS had determined to be unfounded. A.C. and her mother had lived with Aston for a time. Defendant argues that a false allegation is admissible to prove that it is more likely than not that the accusation against defendant is false.

The admissibility of evidence rests in the sound discretion of the trial court, and this court will not substitute its judgment on admissibility absent a clear abuse of discretion. *People v. Gorney*, 107 Ill. 2d 53, 59, 481 N.E.2d 673, 675 (1985). In *Gorney*, the failure to allow a defendant to present evidence of a prior false allegation was deemed harmless error under the facts of that case. *Gorney*, 107 Ill. 2d at 61, 481 N.E.2d at 676. The *Gorney* decision did say that evidence of a prior false accusation of rape by the victim may be admitted if the trial judge deems the evidence relevant and probative. *Gorney*, 107 Ill. 2d at 61, 481 N.E.2d at 676.

In *People v. Nicholl*, 210 Ill. App. 3d 1001, 1010-11, 569 N.E.2d 604, 610-11 (1991), the court found reversible error where a DCFS determination of unfounded, concerning an allegation of abuse of a minor, was not admitted into evidence. The court in *Nicholl* said the evidence was admissible to attack the victim's credibility even though it would not absolutely prove that the allegation deemed unfounded was false.

In *People v. Mason*, 219 Ill. App. 3d 76, 81, 578 N.E.2d 1351, 1355 (1991), this court rejected a similar argument, requiring a showing that the proferred testimony would prove more likely than not that the accusation made on the other occasion was false, to establish its probative value to the case at bar. This court specifically observed that a DCFS determination is a recommendation not to prosecute or continue proceedings and is not a judicial determination or a final determination of the falsity of the accusation. *Mason*, 219 Ill. App. 3d at 82, 578 N.E.2d at 1356.

We distinguish *Gorney* because, in that case, the evidence sought to be admitted indicated that on another occasion the victim had indicated a willingness to intentionally lie about being raped (*Gorney*, 107 Ill. 2d at 58, 481 N.E.2d at 675), and we decline to follow *Nicholl*. Following the reasoning in *Mason*, we find no abuse of discretion. DCFS determining an accusation unfounded does not definitely establish that the accusation determined to be unfounded was false and is not probative of whether the accusation against defendant is false.

■ Defendant's last issue is whether the finding of guilty of aggravated criminal sexual abuse should be vacated. In this case, the judgment and sentence referred only to predatory criminal sexual assault and made no reference to aggravated criminal sexual abuse. At the sentencing hearing, the trial court found, and the State conceded, that the abuse charge merged into the predatory assault charge.

"When multiple convictions of greater and lesser offenses are obtained for offenses arising from a single act, a sentence should be

imposed on the most serious offense and the convictions on the less serious offense should be vacated." *People v. Garcia*, 179 Ill. 2d 55, 71, 688 N.E.2d 57, 64 (1997). However, in the absence of a judgment formally entered or sentence imposed, there is no "conviction." 720 ILCS 5/2—5 (West 2000). A jury verdict is not the equivalent of a conviction. *People v. Cruz*, 196 Ill. App. 3d 1047, 1052, 554 N.E.2d 598, 601 (1990). When there have been findings of guilty of multiple offenses arising out of the same physical act, it is proper for the trial judge to enter judgment and sentence on only the most serious of the offenses. *People v. Donaldson*, 91 Ill. 2d 164, 170, 435 N.E.2d 477, 479-80 (1982); *Cruz*, 196 Ill. App. 3d at 1052, 554 N.E.2d at 601. In this case, the trial court entered judgment on the jury's verdict for predatory criminal sexual assault and expressly declined to enter judgment on the jury verdict for aggravated criminal sexual abuse. This issue is without merit.

The judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

MYERSCOUGH, P.J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent. The trial court erred in admitting the hearsay statements of A.C., as related by Detective Wiese and DCFS investigator Gonzalez. The trial court also erred in preventing the jury from knowing that A.C. had falsely accused Richard Aston of the same conduct. I would reverse and remand for a new trial.

A.C. lived with her apparent parents, defendant and his wife Judith Cookson, until August 1999, when Judith and her boyfriend, Richard Aston, took A.C. with them to Hammond, Indiana. In Hammond, Richard, Judith, and A.C. lived on the streets, with Judith engaging in prostitution and Richard acting as her pimp. Richard then took A.C. and disappeared, and Judith contacted defendant, who came to Indiana and, along with Judith, filed a report of child abduction against Richard. Several days later, on January 29, 2000, Richard returned to Illinois and turned A.C. over to authorities. At that time DCFS caseworker Rice spoke to A.C., who told Rice that she had not been to school in a while, that she understood she was going to be placed in a foster home, that she wanted to live in a clean place, and that she did not want to stay with Don (defendant?) and Judith because they fed her nasty food "like dogs or cats would eat." In response to Rice's questioning about marijuana, A.C. told Rice that "daddy" Don had given her marijuana, put her in the bathtub, took out his "thingy" and proceeded to "hump" on her.

The next day, in response to the question whether she was doing okay, A.C. told her foster mother, Landers, that "I am never going home. I'm not going back to Don and Judy. Don fucked me in the ass." Of course, A.C. had not lived with defendant during the prior six months. In a later conversation with Dr. Nichols-Johnson, A.C. made it clear that she had not been subjected to anal penetration although she then claimed she had been subjected to vaginal penetration. Dr. Nichols-Johnson found no sign of rectal injury and determined that A.C.'s hymen was intact with no indication of sexual abuse. A.C. also stated that "Judy ate my pussy," and "they are going to jail," while she would stay with the foster mother forever. At trial, A.C. acknowledged that she sometimes got Richard and defendant mixed up. She considered both Richard and defendant to be her dad. In mid-2000, after deoxyribonucleic acid (DNA) testing was done, it was established that Richard was A.C.'s biological father.

A.C.'s testimony at trial consisted primarily of one- or two-word answers in response to leading questions. Often A.C. changed her answers in response to follow-up questions.

It is exceptional for hearsay evidence that is taken without the opportunity to cross-examine to be admitted under statutes such as section 115—10. Hearsay should be admitted, under the confrontation clause, only where "truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility," and only where the evidence is "so trustworthy that adversarial testing would add little to [its] reliability." *Idaho v. Wright*, 497 U.S. 805, 820-21, 111 L. Ed. 2d 638, 655-56, 110 S. Ct. 3139, 3149 (1990). Absent "particularized guarantees of trustworthiness" the evidence must be excluded. Evidence possessing "particularized guarantees of trustworthiness" must be at least as reliable as evidence admitted under a firmly rooted hearsay exception. *Idaho*, 497 U.S. at 821, 111 L. Ed. 2d at 656, 110 S. Ct. at 3149. Because of the importance of the right of cross-examination, section 115—10, which places limits on that right, should be strictly construed. *People v. Bridgewater*, 259 Ill. App. 3d 344, 349, 631 N.E.2d 779, 782 (1994); *People v. Bowen*, 183 Ill. 2d 103, 126-28, 699 N.E.2d 577, 589-90 (1998) (McMorrow, J., dissenting).

What was there about the child's hearsay statements here that made them "particularly worthy of belief"? *People v. Coleman*, 205 Ill. App. 3d 567, 583-84, 563 N.E.2d 1010, 1020-21 (1990); 725 ILCS 5/115—10(b)(1) (West 2000) ("sufficient safeguards of reliability"). The statements to Detective Wiese and DCFS investigator Gonzalez were clearly not spontaneous. *Simpkins*, 297 Ill. App. 3d at 678, 697 N.E.2d at 308 (statements during questioning by DCFS investigator);

*Lilly v. Virginia*, 527 U.S. 116, 124, 144 L. Ed. 2d 117, 126, 119 S. Ct. 1887, 1894 (1999) (specific intent of confrontation clause was to prevent trial on *ex parte* affidavits prepared by the prosecution). They were made in preparation for trial, and the conscious decision not to videotape the statements raises the inference that the prosecution saw an advantage in the jury hearing an interpretation of the child's statements, rather than the statements themselves.

The fact that A.C. used terminology unexpected of a child of similar age does not support admission of the hearsay, but in fact weighs against it. A.C. was clearly a streetwise child, but there is no suggestion that knowledge was acquired from activities with defendant. The mistaken reference to anal penetration suggests that A.C. was familiar with the words, but not with what they meant. The logical inference is that A.C.'s knowledge was acquired during the six months prior to the statements being made, the six months that A.C. spent with Richard and Judith in Indiana. The most troublesome aspect of this case is the possibility that A.C.'s references to her "daddy" Don are in fact references to her "daddy" Richard. A.C. testified at trial that she had previously been living in Indiana with her mother *and a man named Donald*. The fact that Detective Wiese, at the time he interviewed A.C., was not aware that she had spent the last six months in the custody of Richard is troublesome. Wiese's narration of A.C.'s statements, given his misunderstanding of the situation, is likely to be misleading. The other witnesses relating A.C.'s statements may have suffered from the same misunderstanding.

There was clearly a motive to fabricate. A.C.'s statements were prefaced with her remarks that she wanted to stay in a clean place and she did not want to stay with Don and Judith because they fed her nasty food. Of course A.C. was not "staying" with Don and Judith at the time her statements were made. It is also troublesome that Richard had just returned the child to Illinois after a report of child abduction had been filed against him by defendant and Judith. A.C. testified at trial that Richard had told her to say bad things about Don. Richard, who most recently had control over A.C., clearly had a motive to fabricate testimony against defendant.

A.C.'s testimony at trial was halting and inconsistent. Were her statements to the four witnesses who repeated her hearsay any better? The hearsay testimony related by Detective Wiese and DCFS investigator Gonzalez was not merely cumulative. It reinforced the testimony of the other witnesses and "lent considerable credence to [the child's] testimony at trial, noteworthy for its contradictions." *People v. Mitchell*, 155 Ill. 2d 344, 355, 614 N.E.2d 1213, 1218 (1993). Inadmissible hearsay gives the State the advantage of having the

victim testify twice and serves to unfairly add heft to the State's case. *Bowen*, 183 Ill. 2d at 126-30, 699 N.E.2d at 589-91 (McMorrow, J., dissenting). A new trial is warranted "if it appears that the delicate scales of justice have been unfairly tilted by the sheer weight of repetition." *People v. Anderson*, 225 Ill. App. 3d 636, 648, 587 N.E.2d 1050, 1059 (1992); *People v. Moss*, 275 Ill. App. 3d 748, 756, 656 N.E.2d 193, 199 (1995).

The majority asserts that the contradictions in A.C.'s statements and testimony "go to the weight to be accorded the statements rather than to a determination of the admissibility of the statements." 335 Ill. App. 3d at 792. That contradicts the majority's listing of the factors to be considered in making a reliability determination under section 115—10(b). The first factor listed is "the child's spontaneity and *consistent repetition* of the incident." (Emphasis added.) 335 Ill. App. 3d at 791. The child's repetition of the incident here was not consistent.

The burden of proof is on the State, not just to show that the statements were made, but that they were "particularly worthy of belief." What was there about these statements that made them "particularly worthy of belief"? The mere fact that defendant has not proved the statements to be inaccurate does not make them "particularly worthy of belief." Section 115—10 is a new and controversial statute. It is not sufficient for us to recite that we cannot say that the trial court abused its discretion. The appellate court should maintain some consistency of result at least for certain situations that are common and for which a clear result follows from the spirit as well as the letter of the applicable rules or statutes. *In re Estate of Smith*, 201 Ill. App. 3d 1005, 1010, 559 N.E.2d 571, 574 (1990). Independent review is necessary to maintain control of, and to clarify, the legal principles governing the factual circumstances necessary to satisfy the protections of the Bill of Rights. *Lilly*, 527 U.S. at 136, 144 L. Ed. 2d at 134, 119 S. Ct. at 1900.

The trial court further erred by refusing to admit evidence that A.C. made an allegation against Richard Aston that DCFS had determined to be unfounded. A complainant's prior or subsequent unfounded allegations of sexual abuse against the accused may be admissible, if they bear upon the complainant's credibility. *Mason*, 219 Ill. App. 3d at 81, 578 N.E.2d at 1355. Defendant must demonstrate only that it is more likely than not that the prior accusations were false. *Mason*, 219 Ill. App. 3d at 82, 578 N.E.2d at 1356. In *Mason*, we suggested that a DCFS finding that the accusation was unfounded was not sufficient proof of falsity, where the DCFS file also indicated that defendant admitted improper touching of the complainant. There is

no such impeachment of the DCFS finding in the present case. Similar considerations apply to the admission of evidence of other crimes, wrongs, or acts committed by the accused. Proof of such acts need not be beyond a reasonable doubt, but such proof must be more than a mere suspicion. *People v. Thingvold,* 145 Ill. 2d 441, 456, 584 N.E.2d 89, 95 (1991). It is not required that evidence "definitely establish that the accusation determined to be unfounded was false." 335 Ill. App. 3d at 793. There was evidence in this case from which a reasonable jury could have concluded that A.C. made false accusations against Richard.

Even beyond that, the fact that A.C. accused Richard of abusing her was relevant to some very material elements of the crime charged in this case and should have been admitted. Evidence of other acts can be admissible if it is intertwined with the instant offense or where it relates to earlier events. *People v. Lewis,* 243 Ill. App. 3d 618, 625-26, 611 N.E.2d 1334, 1339 (1993). A.C. has stated that she has been sexually attacked by every adult in her life, by her mother, Judith, by her father, Richard, and by her stepfather, defendant. The jury was entitled to know that A.C. made these allegations against everyone, not just against defendant. Preventing the jury from knowing this essential evidence deprived defendant of a fair trial.