2025 IL App (2d) 240428-U
No. 2-24-0428
Order filed December 29, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-DV-362 |
| MARCUS L. DONAHOU, | ) ) | Honorable Bianca Camargo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The one-act, one-crime rule barred findings of guilt for both battery and reckless driving where both offenses were based on defendant's driving his vehicle away while the victim was still reaching inside the vehicle.

¶ 2    Following a bench trial in the circuit court of Kane County, defendant, Marcus L. Donahou, was found guilty of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2020)), battery (*id.* § 12-3(a)(1), (a)(2)), and reckless driving (625 ILCS 5/11-503(a)(1) (West 2020)). Defendant argues on appeal that two of the offenses, battery and reckless driving, were improperly carved

from the same physical act. We agree and, therefore, vacate the finding of guilt on the charge of reckless driving.

¶ 3                                      I. BACKGROUND

¶ 4      A criminal complaint against defendant, as amended, charged him with four counts of domestic battery (counts 1-4), two counts of battery (counts 5 and 6) and one count each of aggravated assault with a deadly weapon (720 ILCS 5/12-2(c)(7) (West 2020)) (count 7) and reckless driving (count 8). The charges arose from an incident on June 21, 2022, and the alleged victims were Tracy Atchison-Borg (Tracy) and her daughter Sasha Fletcher-Borg (Sasha). Sasha was defendant's ex-girlfriend. The State nol-prossed count 7 before trial. Of relevance here, count 5 (battery) alleged that defendant "knowingly and without legal justification caused bodily harm to [Tracy] in that defendant drove away when [Tracy's] arm was inside the vehicle, causing her to fall to the ground[,] resulting in abrasions and pain to her right elbow and right leg." Count 8 (reckless driving) alleged that defendant "drove his motor vehicle with a willful and wanton disregard for the safety of [Tracy] while she was reaching into the front passenger seat causing her to fall to the ground."

¶ 5      At trial, Tracy testified that on June 21, 2022, she was waiting for Sasha in a Walmart parking lot in Huntley. Sasha's car had broken down. Tracy saw Sasha arrive at the parking lot in a truck driven by defendant. While Sasha and defendant were still inside the truck, Tracy saw defendant grab Sasha's hair and hit her. When the truck came to a stop, Tracy approached it and opened the door to get her daughter out. At that point, defendant said to Tracy, " 'F*** you, momma, I'm taking you to court for the baby.' " When Sasha exited the truck, Tracy stood between the open door and the truck's frame. She had one hand on the inside door handle. The truck started moving. Tracy, with "[her] hand still on the [truck]," started running to keep up with the truck.

Tracy eventually fell when she could no longer keep up with the truck, and it started dragging her. She suffered abrasions to her elbow, knee, and shin.

¶ 6     On cross-examination, Tracy denied that she tried to enter the truck before it started moving. She acknowledged that she had been appointed guardian of defendant's son, who was her grandson. On redirect examination, Tracy testified that once the truck started moving, she tried to get in because she "figured it was easier to get in than let go and get run over."

¶ 7     Sasha testified that on June 21, 2022, her car broke down between Crystal Lake and Huntley. She then waited for defendant (her "[e]stranged partner" and the father of her son) to pick her up. Defendant came in his truck, a "gray lifted Ford." By "lifted," Sasha clarified that the truck had a "six-inch lift kit." Sasha and defendant proceeded to the Walmart in Huntley, where Tracy had agreed to meet them and give Sasha a ride. When Sasha and defendant arrived, they were arguing about their child. Defendant was "[a]gitated," and they were yelling at each other. Defendant hit Sasha's face near her eye, but she did not think he did so intentionally.

¶ 8     Sasha testified that Tracy "storme[d] up to the [truck] aggressively and yelling." She wanted to know what took them so long to get there. While Sasha was unbuckling her seatbelt, Tracy opened the passenger door and "removed [Sasha] from the [truck]." Sasha denied that defendant attempted to prevent her from exiting the truck; she did not recall whether defendant pulled her hair. After exiting the truck, Sasha walked to Tracy's car. Sasha turned and saw that Tracy was "inside of the [truck] still." Defendant started driving again. Tracy held onto the truck until she "jumped off." Tracy landed on her feet but in a "crouch position." Sasha denied telling a police officer that defendant grabbed her hair and refused to let her leave his truck.

¶ 9     Huntley police officer Marcus Griffith testified that he responded to the incident at the Walmart parking lot. Sasha told him that defendant pulled her hair and prevented her from exiting

his vehicle. Sasha complained of eye pain. Griffith spoke with a witness who said that defendant had squealed his tires. Griffith observed tire marks in the immediate vicinity of the incident.

¶ 10 Defendant did not present any evidence. In closing argument, the prosecutor remarked in relevant part:

"I want to start with count eight, the reckless driving count. To sustain the charge of reckless driving, we must prove that the defendant drove his vehicle with a willful or wanton disregard with [*sic*] the safety of persons or property.

Clearly, Judge, he disregarded Tracy's safety in this case. You heard that Tracy just witnessed this man batter her 20-year-old daughter, so she went to go get Sasha out of the car. While doing that, her hand remained on the door, and that's when the defendant took off, in what Tracy described, as a high rate of speed leaving her to fall to the concrete and for her to suffer those injuries. ***.

* * *

Finally, Judge, on counts five and six, these are the battery counts on the mother, Tracy, here. I would really just reiterate what I argued on the reckless count. The defendant was in full control of his vehicle. He knew that his door was open. He knew that Tracy was holding onto that door, and he decided to drive away at a high speed causing Tracy to fall."

¶ 11 The trial court found defendant guilty of two of the four counts of domestic battery (counts 1 and 2), both counts of battery (counts 5 and 6), and reckless driving (count 8). The court found defendant not guilty of counts 3 and 4. For purposes of sentencing, the court merged count 2 into count 1 and count 6 into count 5. The court imposed a 12-month term of probation for domestic battery and battery and placed defendant on supervision for 12 months for reckless driving. The judgment order for the reckless driving charge read: "Withhold Judgment-Court Supervision."

¶ 12　　Defendant filed a timely notice of appeal. The Office of the Appellate Defender was appointed to represent defendant on appeal. Later, appellate counsel filed a motion to withdraw (see *Anders v. California*, 386 U.S. 738 (1967); *People v. Jones*, 38 Ill. 2d 384 (1967)), claiming that there were no potentially meritorious issues for appeal. On April 25, 2025, we denied the motion without prejudice and directed appellate counsel to file either a new motion to withdraw or a brief addressing whether the conviction of battery (count 5) and the finding of guilt of reckless driving (count 8) violated the one-act, one-crime rule, and also addressing any other nonfrivolous issues counsel desired to raise. See *People v. King*, 66 Ill. 2d 551 (1977). Our order also stated:

　　　　"Given that defendant was placed on supervision for reckless driving and entry of a judgment of conviction was deferred[,] [c]ounsel shall notify this court if at any point during the pendency of this appeal the trial court discharges defendant from supervision and dismisses the charge of reckless driving and shall also advise the court whether, in counsel's view, the [one-act, one-crime issue] is therefore moot."

¶ 13　　Thereafter, appellate counsel filed a brief on defendant's behalf, raising one issue (the one-act, one-crime issue we identified) for appeal. Later, defendant filed a status report as contemplated by our April 25, 2025, order. Counsel attached a July 10, 2025, order of the trial court, which declared that defendant's supervision on the reckless driving charge was terminated unsatisfactorily and that the case would be "sen[t] *** to collections" and "[c]lose[d]." Defendant argued that the July 10 order did not render the appeal moot, because "[t]he reckless driving charge was not dismissed." The State replied that, because a final judgment had not been imposed on the reckless driving charge, we lacked jurisdiction over the appeal. The State did not alternatively address mootness. In our analysis, we address our jurisdiction and, ultimately, the merits of this appeal.

¶ 14                                    II. ANALYSIS

¶ 15    Defendant's brief raises one issue: whether the trial court violated the one-act, one-crime rule by finding defendant guilty of both battery and reckless driving. Before addressing that issue, however, we must consider the State's challenge to our jurisdiction. The State argues that, because the trial court did not impose a sentence for reckless driving, there is no final judgment from which defendant may appeal. The argument is meritless. The State cites *People v. Caballero*, 102 Ill. 2d 23, 51 (1984), which observed that "[t]he final judgment in a criminal case is the sentence, and, in the absence of the imposition of a sentence, an appeal cannot be entertained." (*People v. Michel*, 230 Ill. App. 3d 675, 678 (1992), cited by the State, stands for essentially the same proposition.) Notably, however, the issue in *Caballero* was the supreme court's jurisdiction over guilty verdicts for which the defendant received no disposition at all, not even supervision. *Caballero*, 102 Ill. 2d at 51.

¶ 16    Nonetheless, it is true that placing a defendant on supervision is not a final judgment. As we have explained:

> "In placing a defendant on supervision, a court does not impose a sentence; indeed, it leaves open whether the defendant will ever be sentenced at all. If the defendant completes supervision successfully, the charges are dismissed and the result resembles an acquittal [citation]; otherwise, the defendant may be found guilty and sentenced. Until these matters are resolved, there is no final judgment." *People v. Rozborski*, 323 Ill. App. 3d 215, 220 (2001).

¶ 17    The flaw in the State's reasoning is that appeals in criminal and civil cases are not strictly limited to cases in which a final judgment has been entered. Article VI, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, § 6) provides, "The Supreme Court may provide by

rule for appeals to the Appellate Court from other than final judgments of Circuit Courts." The court has done just that for dispositions of supervision. Illinois Supreme Court Rule 604(b) (eff. Apr. 15, 2024) provides, in pertinent part, "A defendant who has been placed under supervision *** may appeal from the judgment and may seek review of the conditions of supervision, or of the finding of guilt *** or both." Thus, the State cannot prevail on the basis that, as in *Caballero* and *Michel*, no sentence was imposed in this case. Rather, the State's position depends on a much different proposition: that having acquired jurisdiction to review the finding of guilt when defendant was placed on supervision, we were divested of jurisdiction when supervision was terminated unsuccessfully. *Caballero* and *Michel* provide no support for that proposition. Nor does any other case we are aware of. We therefore reject the State's challenge to our jurisdiction.

¶ 18 Turning to the merits, we note that our April 25, 2025, order asked the parties to address whether this appeal would be moot if defendant had successfully completed supervision and the reckless driving charge had been dismissed. As it happened, defendant was discharged unsuccessfully from supervision, and the reckless driving charge stands. Therefore, by our own criteria, the appeal is not moot.

¶ 19 We consider, therefore, whether the one-act, one-crime rule precludes defendant from being found guilty of both battery and reckless driving. The one-act, one-crime rule originated in *King*, 66 Ill. 2d at 555-56, which sought to resolve confusion about when multiple convictions[1] are prejudicial. The court held:

---

[1] Because the supreme court in *King* referenced "convictions," some appellate decisions have held that the one-act, one-crime rule applies *only to* "convictions," not mere findings of guilt. See *People v. Cookson*, 335 Ill. App. 3d 786, 794 (2002); *People v. Cruz*, 196 Ill. App. 3d 1047, 1052 (1990). Although the parties do not raise the issue, the trial court's disposition of supervision on the reckless driving charge

"Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act', when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. *** [W]hen more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." *Id.* at 566.

---

did not entail a "conviction" as that term is understood in the Unified Code of Corrections (see 730 ILCS 5/5-1-5 (West 2020) (defining "conviction"); *id.* § 5-1-21 (defining "supervision")). Indeed, as we noted in our April 25, 2025, order, "entry of a judgment of conviction was deferred" on the reckless driving charge. However, the unsuccessful termination of defendant's supervision will allow the State to seek a conviction and sentence on the reckless driving charge. Also, under the Criminal Identification Act (20 ILCS 2630/0.01 *et seq.* (West 2020)), which provides for the sealing of certain "convictions" (*id.* § 5.2(c)(3)), "[a]n order of supervision or an order of qualified probation that is terminated unsatisfactorily is a conviction, unless the unsatisfactory termination is reversed, vacated, or modified and the judgment of conviction, if any, is reversed or vacated." (*id.* § 5.2(a)(1)(C)). Finally, we note that, in *Cookson* and *Cruz*, no disposition (supervision or otherwise) was entered on the jury verdicts at issue there. See *Cookson*, 335 Ill. App. 3d at 794; *Cruz*, 196 Ill. App. 3d at 1052. Given the consequences that have and may yet attach to the finding of guilt of reckless driving in this case, we apply the one-act, one-crime rule to that finding and the battery conviction.

¶ 20    Defendant argues that the charges of battery and reckless driving committed against Tracy were based on the "same conduct," because defendant's driving was the method of battering her. In response, the State first maintains that defendant's argument is insufficiently developed to warrant review and should be deemed forfeited. A contention must be supported by reasoned argument and citation to authority and the record. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The State correctly acknowledges that defendant cites relevant authority. But, according to the State, defendant "does nothing more than offer a couple of conclusory statements with little citation to the record." Defendant, we note, quotes (and properly cites) the indictment and the State's closing argument—both relevant sources for determining whether the State attempted to carve multiple offenses from the same physical act. See *People v. Crespo*, 203 Ill. 2d 335, 342-44 (2001) (relying on the charging instrument and the State's closing argument). Defendant offers reasoned conclusions based on those sources; further elaboration by him would not have significantly assisted our analysis. To be sure, defendant rather passingly references (and does not cite) the trial evidence: "The error here is clear and obvious because the evidence presented at trial lacked any suggestion that the charges were based on separate acts." Defendant should have specified the evidence and cited the record. However, we cannot say that his argument as a whole is "devoid of any reasoning or citation to authority" (*Sciarrone v. Village of Island Lake*, 2025 IL App (2d) 240153, ¶ 24) such that it should be deemed forfeited.

¶ 21    We also note that defendant did not raise the one-act, one-crime issue in his posttrial motion, which would ordinarily result in forfeiture of appellate review. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, a violation of the one-act, one-crime rule is reviewable under the plain error rule. *People v. Smith*, 2019 IL 123901, ¶ 14. Accordingly, we consider the parties' arguments on the merits.

¶ 22    At this point, it is helpful to differentiate a criminal defendant's "acts" from his "conduct." As noted, for purposes of the one-act, one-crime rule, an act is an "overt or outward manifestation" (*King*, 66 Ill. 2d at 566). In contrast, " '[c]onduct' means an act or a series of acts, *and the accompanying mental state*." (Emphasis added.) 720 ILCS 5/2-4 (West 2020). It is fairly clear that when defendant discusses his "conduct," he is referring to the *physical act* underlying the battery and reckless driving charges. The State's use of the terminology is more problematic. The crux of the State's argument is as follows:

> "As prosecuted at trial, defendant's conduct was different in each count. The reckless driving charge was based on a different act because it required proof of the act of driving with a willful and wanton disregard for the safety of others, which is not included in the offense of battery. ***.
>
> The battery charge was based on a different act because it required proof that defendant knowingly caused bodily harm to Tracy. ***."

The State is correct that the charges at issue alleged different "conduct" inasmuch as they alleged different mental states. However, mental states are not "overt or outward manifestations" that transform an otherwise unitary act into separate acts that would support separate convictions.

¶ 23    Although the supreme court "continue[s] to advocate the *King* doctrine as the guiding principle" for one-act, one-crime issues, the court has recognized the utility of a six-factor test devised by the appellate court for determining whether a defendant's conduct consists of one act, as defined in *King*, or multiple acts. *People v. Sienkiewicz*, 208 Ill. 2d 1, 7-8 (2003). Those factors are "the existence of an intervening act or event; the interval between successive parts of [the] defendant's conduct; the identity of the victim; the similarity of the acts performed; whether the conduct occurred at the same location; and prosecutorial intent as reflected in the charging

instrument." *People v. Melton*, 282 Ill. App. 3d 408, 421 (1996). The supreme court has cautioned that, when considering these factors, a court "must not lose sight of the forest for the trees. The definition of an 'act' under the *King* doctrine remains simply what this court stated in *King*: 'any overt or outward manifestation which will support a different offense.' " *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996) (quoting *King*, 66 Ill. 2d at 566).

¶ 24    Under either the multifactor test or the *King* test *simplicitur*, we conclude that the offenses of battery and reckless driving were carved from a single act. As reflected in the charging language, the State's evidence, and the State's closing argument, both offenses were based on defendant's act of driving away while Tracy was still reaching inside his vehicle. The offenses occurred at the same location and involved the same victim; there was neither an interval nor an intervening act or event; and nothing in the charging instrument suggested a prosecutorial intent to treat defendant's conduct as a series of acts rather than a single act. Accordingly, the trial court erred in finding defendant guilty of both battery and reckless driving.

¶ 25    When a defendant has been convicted of two offenses carved from the same physical act, the reviewing court must vacate the less serious conviction. *People v. Hatcher*, 2024 IL App (1st) 220455, ¶ 67. To determine which offense is less serious, we look first to the potential punishments for the offenses, and if those are the same, we consider which offense has the less culpable mental state. *Id.* As charged here, both battery and reckless driving were Class A misdemeanors (see 720 ILCS 5/12-3(b) (West 2020); 625 ILCS 5/11-503(b) (West 2020)), but reckless driving has a less culpable mental state—recklessness—than battery, which requires a knowing act. See *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 43. Accordingly, we vacate the finding of guilt on the charge of reckless driving.

¶ 26                                III. CONCLUSION

¶ 27     For the reasons stated, we vacate the circuit court of Kane County's finding of guilt on the charge of reckless driving. In all other respects, we affirm the court's judgment.

¶ 28     Affirmed in part and vacated in part.